# Richmond

CHARLES LOUIS KNIGHT AND SARA HAMMOND KNIGHT v. GIUSEPPE FERRANTE, ROBERT L. MAXWELL, DORSEY S. BEACH, AND THOMAS W. PHILLIPS AND HENRY J. KLINGE, TRUSTEES.

November 28, 1960.

Record No. 5145.

Present, All the Justices.

The opinion states the case.

*C. Louis Knight* (*James H. Simmonds*, on brief), for the appellants.

*Charles S. Russell* and *Ralph C. Mutchler, Jr.* (*Jesse, Phillips, Klinge and Kendrick; Harrell and Mutchler*, on brief), for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

Giuseppe Ferrante filed a bill in equity to enforce a mechanic's lien perfected by him on a dwelling house which Dorsey S. Beach, as general contractor, had agreed to build for Charles Louis Knight and Sara Hammond Knight on a lot owned by the Knights in Arling-

ton county. The bill alleged that Beach, the general contractor, was indebted to the plaintiff in the sum of $420.40, with interest, for the price of labor and materials furnished by him as a "stone contractor" in the construction of the house. Beach, the Knights, and the trustees under a deed of trust on the property were made parties defendant.

Robert L. Maxwell filed an intervening petition to enforce a mechanic's lien which he had perfected on the property in the sum of $1,275, with interest, for the price of work done and materials furnished by him as "a masonry contractor" in the construction of the building.

Beach, the general contractor, did not answer the bill of complaint or intervening petition. The Knights, sometimes herein referred to as the owners, answered asserting the defenses that, (1) the bill and intervening petition were insufficient in law in that they did not properly state the amount, character and nature of the work done and materials furnished, as required by Code, § 43-22; (2) Beach, the general contractor, had failed to complete the work in accordance with the terms of the contract and that the owners were not indebted to him in any amount.

After hearing the evidence ore tenus the lower court overruled the contentions of the owners and entered a decree in favor of the plaintiff, Ferrante, and the intervening petitioner, Maxwell, for the respective amounts claimed by them with interest and costs. It also entered personal judgments in favor of the respective subcontractors against Beach. From this decree Beach has not appealed and the judgments against him have become final. But the Knights have appealed.

In their assignments of error the Knights insist that the bill and intervening petition were insufficient in law in that neither subcontractor had filed with his pleading "an itemized statement of his account" giving the information required by Code, § 43-22. They also contend that the finding of the lower court that the owners were indebted to the general contractor, "in a sum exceeding the aggregate amounts of the subcontractors' liens herein sought to be enforced," is contrary to the law and the evidence. Hence, they say, the liens of the subcontractors are not enforceable.

The underlying facts are these: On May 18, 1957, the Knights entered into a written contract with Beach, as general contractor,

whereby he agreed to construct for them a dwelling house on a lot owned by the Knights, described as lot 5 in Riverwood Subdivision, on North 26th street in Arlington county. According to the contract the owners were to pay the contractor for the performance thereof the sum of $37,300, subject to additions and deductions. This amount was to be paid in eight installments, corresponding with the progress of the construction work. During the progress of the work certain extras were ordered by the owners and undertaken by the contractor. The nature and amount of these are not here material.

The evidence shows that the Knights have paid the general contractor seven of the installments and are withholding the final payment, which amounts to 20% of the original contract price plus the price of the extras, or approximately $6,400.

According to the terms of the contract the building was to be completed on or before November 15, 1957. However, this was not done. On January 31, 1958, the Knights moved into the uncompleted building. They claim that much work is yet to be done by the general contractor in order to complete the building in accordance with the terms of the contract and specifications; that despite their numerous complaints these matters have never been attended to; and that the general contractor has abandoned the performance of the contract.

On the other hand, while the general contractor admits that he has abandoned the project, he contends that the building has been substantially completed in accordance with the terms of the contract. The owners have not undertaken to complete the work on the building, nor have they ascertained what it will cost to do so.

■ First, as to the sufficiency of the bill and intervening petition. Code, § 43-22, providing for the enforcement of a mechanic's lien by a suit in equity, requires that, "The plaintiff shall file with his bill an itemized statement of his account, showing the amount and character of the work done or materials furnished, the prices charged therefor, the payments made, if any, the balance due, and the time for which interest is claimed thereon."

Ferrante alleged in his bill that he is a "stone contractor" and "entered into an agreement with" Beach "to furnish flagstone and other stone and labor in the construction of a house then being built" by Beach "as principal contractor" for the defendants, the Knights. Then follows this allegation:

·"The labor and materials furnished to the said Dorsey S. Beach for the above mentioned construction and the price and balance of the account is as follows:

| | |
|---|---:|
| "Flagstone work, including stone, | $432.40 |
| "Dry-stone wall, including labor, | 138.00 |
| "Total, | $570.40 |
| "Received on account, | 150.00 |
| | $420.40" |

Continuing, the bill identifies by lot and block number the property owned by the Knights on which "the said labor and materials were used." In a subsequent paragraph it is alleged that interest on the balance is due from June 16, 1958.

The statement of account of Maxwell is filed as an exhibit with his intervening petition. The relevant part reads thus:

"Contract price for labor and materials furnished on Lot 5, Riverwood Subdivision, Arlington County, Virginia—

| | |
|---|---:|
| "One brick and masonry work complete for one-story brick house with basement, per contract, | $5,800 |
| "Less payments received, | 4,525 |
| "Balance due, | $1,275 |

"Date June 12, 1958."

While the date from which interest is claimed is not shown on the latter account, it is specifically alleged in the petition to be from June 12, 1958.

The Knights attack the sufficiency of the bill and intervening petition because, they say, the statements of account incorporated in or filed with these pleadings do not meet the requirements of Code, § 43-22, in that they are not itemized and do not sufficiently show the amount and character of the work done or materials furnished. They rely upon *Gilman* v. *Ryan*, 95 Va. 494, 28 S. E. 875; *Brown & Hoof* v. *Cornwell*, 108 Va. 129, 60 S. E. 623, and *Furst-Kerber Cut Stone Co.* v. *Wells*, 116 Va. 95, 81 S. E. 22. These cases deal with the sufficiency of the account which was required under the former statute (Pollard's Code of 1904, § 2476) to be filed "in the clerk's office" in perfecting a lien. We held that such an account was "one of the most important steps in the establishment of a mechanic's lien" and that the requirement of the statute must be

substantially complied with. *Brown & Hoof* v. *Cornwell, supra,* 108 Va., at page 131.

In the present case we are not concerned with an account which is required to be recorded as an integral part of the lien. The present statute requires the recordation of a memorandum of the lien instead of an account. Code, § 43-4 *ff.;* Burks Pleading and Practice, 4th Ed., § 459, p. 890. Here we are concerned with the account which Code, § 43-22, requires to be filed with the plaintiff's pleadings for the purpose of giving information as to the particulars of the claim. There is no suggestion in that section that particularity in the account is jurisdictional, or that lack of particularity is fatal and requires a dismissal of the claim. It is a long-settled practice in this jurisdiction that when a defendant is not satisfied with the alleged particulars of the plaintiff's claim, he may ask for and usually obtains, under the direction of the court, further particulars of the claim. Here the owners sought no further particulars of the subcontractors' claims, but in effect moved to strike the bill and intervening petition on the ground of the alleged insufficiency of the accounts. The lower court properly overruled that motion.

In other jurisdictions which have dealt with the matter it is held that where the mechanics' lien statute requires a claimant's pleading to be accompanied by an itemized account, the meagerness of the statement of items filed is not a ground for striking the complaint. 57 C. J. S., Mechanics' Liens, § 294-h, p. 934. See also, *Behrens* v. *Kruse,* 121 Minn. 90, 140 N. W. 339, 341; *Armstrong & Latta Co.* v. *Wilmington Sugar Refining Co.,* 2 W. W. Harr. (32 Del.) 125, 120 A. 94, 97.

██ We agree with the lower court that when the Ferrante account is read in connection with the further allegations in his bill it sufficiently establishes that the work and materials were contracted for as an entirety and meets the requirement of Code, § 43-22. See *Rust* v. *Indiana Flooring Co.,* 151 Va. 845, 862, 145 S. E. 321.

The lower court properly held that the Maxwell account shows on its face that this work was contracted for as an entirety and meets the requirements of § 43-22.

██ The owners claim that the Maxwell account is defective in that it describes the house as being a "one-story" brick house whereas it is a "two-story" house. There is no merit in this contention. It will be observed that the account describes the building as located on

"Lot 5, Riverwood Subdivision, Arlington County, Virginia," which is admitted to be correct. The type of the building was not a necessary part of the description and the mistake therein should be disregarded as surplusage. Both Maxwell and Beach testified that this work was done on the Knights' dwelling and there is no evidence to the contrary.

■ The owners next contend that there is no evidence to sustain the finding of the lower court that they were indebted to Beach, the general contractor, in a sum exceeding the aggregate amount of the claims of the subcontractors, Ferrante and Maxwell. They argue that the general contractor has not completed the work and until he has done so, they owe him nothing. Moreover, they say, the subcontractors must claim through Beach, the general contractor, and that unless and until it is shown that the owners are indebted to the general contractor, the subcontractors cannot maintain their liens.

This argument overlooks the nature, purpose and effect of the mechanics' lien statutes. While under Code, § 43-18, the subcontractor may claim through the general contractor, he is not obliged to do so. Under § 43-7 the subcontractor may perfect his own independent lien. As is said in Burks Pleading and Practice, 4th Ed., § 460, p. 893, "If the subcontractor wishes to take out his independent lien, he may do so by doing just what the general contractor is required to do, and, *in addition,* give notice in writing to the owner of the property, or his agent, of the amount and character of his claim; but the amount secured by this lien cannot exceed the amount in which the owner is indebted to the general contractor at the time the notice is given, or shall thereafter become indebted to the general contractor upon his contract with the general contractor for such structure, * * *."

It is conceded that in the present case the subcontractors perfected their respective liens and gave notice thereof to the owners in the manner required by Code, § 43-7. Having done so, each thereby obtained a lien on the property independent of the lien of the general contractor, the only limitation being that the amount of the subcontractor's lien, as § 43-7 says, shall not exceed the amount in which the owners were indebted to the general contractor at the time the notice was given, or thereafter became indebted to the general contractor upon his contract for the construction of the building. Thus, except as to the limitation on the funds to which the subcon-

tractors may look for payment of their claims, they do not claim through the general contractor, but independently of him.

The failure of the general contractor to complete the building did not necessarily defeat the liens of the subcontractors. Section 43-16 contemplates that this may happen. It provides that, "If the owner is compelled to complete his building, * * * or any part thereof undertaken by a general contractor in consequence of the failure or refusal of the general contractor to do so, the amount expended by the owner for such completion shall have priority over all mechanics' liens which have been or may be placed on such building, * * *." Hence, the liens of the subcontractors are left unimpaired, but are subject to the amount expended by the owners for the completion of the building.

The owners argue that they were under no duty to complete the building. This is true in so far as the general contractor is concerned. But the owners admit that they have withheld from the general contractor 20% of the contract price and extras, or approximately $6,400, as security for their claims against him. Since that fund is the limit of the amount to which the subcontractors may look in enforcing payment of their liens, the burden was on the owners to go forward with the evidence and show what claims, if any, the owners have against this fund. If the owners had completed the building and shown that the cost of doing so had exhausted this fund, the liens of the subcontractors would have been wiped out under the express terms of Code, § 43-16. But the owners did nothing. They did not complete the building, nor have they offered any evidence as to the cost of completion. In short, there is no evidence that the owners have any setoffs or counterclaims against the funds which they are withholding from the general contractor. In the absence of such evidence the lower court correctly held that the owners were indebted to the general contractor in a sum exceeding the aggregate amount of the subcontractors' claims.

Nor does the fact that the contract stipulated that the final payment to the general contractor shall not be due until he has delivered to the owners a complete release of all liens or receipts in full covering all labor and materials for which a lien could be filed, and that this has not been done, defeat the liens of the subcontractors. We are not here concerned with when the final payment is due. Our concern is whether the owners were indebted to the general con-

tractor at the time the notice was given by the subcontractors to the owners, or thereafter became indebted to him. Code, § 43-7. As has been said, under the state of the evidence adduced, it was shown that the owners were so indebted.

The evidence on behalf of these subcontractors, which the lower court has accepted as true, shows that the work required by their respective contracts with the general contractor was fully and properly performed and that their respective claims were correct and due and payable. Thus, there is ample evidence to sustain the finding that the liens of these subcontractors are valid and enforceable against the property.

Accordingly, the decree appealed from is

*Affirmed.*