## Richmond

## VNB Mortgage Corporation, Etc., Et Al. v. Lone Star Industries, Inc., Et Al.

December 2, 1974.

Record No. 730875.

Present, I'Anson, C.J., Carrico, Cochran, Harman, Poff and Compton, JJ.

*James C. Howell (William P. Dickson, Jr.; Willcox, Savage, Lawrence, Dickson & Spindle,* on brief), for appellants.

*Victor S. Altman; Robert E. Gillette; Allen D. Zaleski; William E. McCardell, Jr.; Robert C. Barclay, III; William A. Cox, III (V. Alfred Etheridge, Jr.; Stuart L. Nachman; George J. Viertel; Joshua Pretlow; Charles E. Jenkins, II; Beryl S. Adler; Edwin C.*

*Kellam; H. Thomas Fennell, Jr.; E. Everett Bagnell; Walkley E. Johnson, Jr.; Geoffrey F. Birkhead; William S. Tennant [D.C.]; J. H. Krug [D.C.]; Krooth & Altman [D.C.]; Crenshaw, Ware & Johnson; Kellam, Pickrell & Lawler; Goldblatt, Lipkin, Cohen, Anderson, Levy & Jenkins; Adler & Kantor; Shapiro & Gillespie,* on briefs), for appellees.

Cochran, J., delivered the opinion of the court.

Spring Construction Co., Inc. (Spring), one of the appellees herein, was general contractor under contracts with appellees Cogic Homes, Inc., and Parker-Riddick Village, Inc. (collectively, the Owners), for the construction of two housing developments in the City of Nansemond. The construction was financed by appellant, VNB Mortgage Corporation (formerly Mortgage Investment Corporation) (VNB), which held deeds of trust on each of the properties to secure advances made by it. Financing of the development projects was insured by the Federal Housing Commissioner, Department of Housing and Urban Development (HUD).

After substantial performance by Spring under the construction contracts (estimated by Spring at 78% of completion under one and 90% under the other) the problem arose of providing adequate sewer facilities, not included in the contracts, at an estimated additional cost of $175,000. When the Owners were unable to finance this additional expense, HUD notified VNB by letter of October 12, 1972, that it would not insure payments for work already performed under the contracts in September, 1972, or for any additional advances. VNB thereupon declined to honor requisitions for work performed in September, 1972, or to make any further advances, and construction on both projects ceased. Moreover, in accordance with the contract provisions 10% had been withheld from each progress payment made to Spring pending completion of the projects, and Spring has never received these withheld sums.

Mechanics' liens were filed by the general contractor, architects, and by various subcontractors and materialmen, and suits in equity were instituted to enforce these liens. During the pendency of these suits VNB proceeded to have the trustees foreclose and sell the properties at public auction under the

deeds of trust, posting surety bonds under Code §§ 43-70 and -71 (Repl. Vol. 1970) to clear the titles of mechanics' liens. The mechanics' lien suits were consolidated for trial as two proceedings, and VNB and the trustees under its deeds of trust, as well as the Owners, were parties defendant in the litigation.

VNB contended in the trial court and before us that Spring and the subcontractors and materialmen had waived their rights to file mechanics' liens for work performed and materials supplied by them at the Owners' properties. The trial court, after hearing evidence in the consolidated proceedings, entered, on August 23, 1973, and September 4, 1973, the decrees appealed from herein holding that the construction contracts had been breached by the Owners, and that VNB was a party to the breach and was estopped to rely on the alleged waiver, so that the mechanics' liens were in full force and effect.

Each of the two construction contracts between the respective Owners and Spring was on a standard Federal Housing Administration (FHA) Form which contained the following provision:

"Article 7—Waiver of Lien or Claim

The Contractor shall file no mechanic's or materialman's lien or maintain any claim against the Owner's real estate or improvements for or on account of any work done, labor performed or materials furnished under this Contract."

VNB argues that by this provision Spring expressly waived its right to file mechanic's or materialmen's liens against the properties. We agree.

Spring contends that the language of Article 7 evidences an executory promise, a promise to waive liens in the future rather than a present waiver, and that there was anticipatory breach of the contracts by the Owners which freed Spring from this provision and every other contractual obligation. The alleged anticipatory breach relied on was the failure of the Owners to pay because of the HUD decision to terminate federal insurance of progress payments advanced by VNB. But lien waivers, by their very nature, are given in anticipation of the possibility of nonpayment. Resort to mechanics' liens generally occurs only when there is a failure to pay, so that the requirement of a waiver of liens is intended to prohibit the contractor from asserting an otherwise available lien when he is not paid by the

owner. *Walker & Laberge Co.* v. *Bank*, 206 Va. 683, 691, 146 S.E.2d 239, 245 (1966). Nor do we find any merit in Spring's argument that an exception to the rule that a waiver of liens remains in effect upon nonpayment by the owner should apply where the nonpayment occurs under contracts for which payments are guaranteed by a federal agency.

We hold that Article 7 was an independent covenant whereby Spring agreed that it would not file any mechanic's liens in the event of nonpayment. Spring contends that repudiation of the contract cancels the lien waiver, but that rule applies only to bilateral contracts consisting of mutually dependent promises. *Simpson* v. *Scott*, 189 Va. 392, 398, 53 S.E.2d 21, 23-24 (1949).

Spring's counsel conceded in argument before us that he could find no authority to support the estoppel theory on which the decision of the trial court was based, and we agree that this theory is inapplicable in the present case. To determine the rights of the general contractor and the subcontractors, we are concerned primarily with the construction of contracts.

■ The contracts between Spring and the subcontractors contained the following paragraph:

> "(5) Subcontractor agrees to indemnify and hold harmless the Contractor for any and all losses and damages occasioned by or resulting under Contractor's contract with Owner caused by the fault, negligence or otherwise of Subcontractor, *and agrees further to be bound to the Contractor by the terms of the Agreement, general conditions, drawings and specifications, and to assume toward Contractor all the obligations and responsibilities that the Contractor, by those documents, assumes to the Owner."* (Emphasis added.)

VNB asserts that by this provision the waiver of liens set forth in Article 7 of Spring's contracts with the Owners was incorporated by reference and accepted by the subcontractors. The language of paragraph (5), standing alone, may be susceptible to such an interpretation. *See e.g., Harper* v. *Home Indemnity Company*, 140 So.2d 653 (La. Ct. App. 2d Cir. 1962); *Walker* v. *Collins Const. Co.*, 236 N.W. 334 (Neb. 1931). Nevertheless, it follows but falls far short of the specificity of paragraph (1) of the subcontracts, which provides in pertinent part as follows:

> "(1) Subcontractor agrees to furnish all material and perform

all work as follows: . . . in accordance with the drawings and specifications prepared by [the architect] . . . *for said project, and in accordance with all the terms, general conditions and special conditions, and in accordance with drawings and specifications described . . . all of which are a part of the Agreement between Contractor and Owner and all of which are hereby made part and parcel of this Agreement herein, and shall be read as a part hereof, and to which Subcontractor acknowledges having read and approved the same, and agrees to be bound thereby as to the work and materials herein and therein called for."* (Emphasis added.)

Thus, by paragraph (1) the subcontractor was put on notice of the general contract between the Owners and Spring, and of the plans and specifications for the projects, but he accepted them only as to the nature of the work and materials required of him. The incorporation of documents by reference in paragraph (1) is, therefore, restricted to that purpose only. *Guerini Stone Co.* v. *Carlin,* 240 U.S. 264 (1916), *Nelson and Co.* v. *Development Corp.,* 207 Va. 386, 391, 150 S.E.2d 142, 146 (1966).

In no part of the subcontract, a four-page document containing twenty-two printed paragraphs and blank spaces with specific information typed therein, is there any express waiver by the subcontractor of his right to file a mechanic's lien. Indeed, the possibility that lien waivers might thereafter be required of subcontractors, sub-subcontractors and materialmen is evidenced by paragraph (9)[1] of the subcontracts and by

---

[1] "(9) As a prerequisite to any payments, either partial or final Contractor may require evidence satisfactory to it showing that all bills for labor, equipment and/or a written legally binding statement from each person, firm or corporation furnishing labor, equipment and/or materials in connection with the work done under this Agreement waiving any and all liens and claims of every kind in connection therewith. When any payment is to be made under this Agreement, as a conditions [sic] precedent thereto, Contractor may, in its discretion, require evidence satisfactory to it, to be furnished it showing what, if any, liens against said work, materials or equipment have been or may be acquired and/or what action lie against Contractor, for or on account of any labor done or materials or equipment provided for said work. If at any time, it shall appear that there is any lien or any other claim or demand of any kind whatsoever for which Contractor, the work, or the materials or equipment provided therefor, or the premises, may be liable or so held and for which Contractor or Subcontractors, if any, is chargeable, Subcontractor will immediately cause all such liens or claims to be paid and discharged and dissolved, or proper provisions made therefor by bond or otherwise, and Contractor may, in its discretion, retain out of any money due or to become due to Subcontractor payable jointly to Subcontractor and such claimant."

Article 4 [2] of the general contract between Spring and each of the Owners.

Even if there were incorporation of Article 7 of the general contract by reference into the subcontract, the effect is not clear. Article 7 deals with waiver of a single lien or claim, rather than the numerous liens that might arise from two costly construction projects. The wording of Article 7 appears to have been directed to statutes which permit the filing of a mechanic's lien only by the general contractor, rather than to statutes such as Virginia's which permit the lien to be filed not only by the general contractor but also independently by each subcontractor and materialman to the extent that moneys are payable by owner to general contractor. The subcontractor, under the provisions of Code § 43-18 (Repl. Vol. 1970), may rely on the general contractor's lien or, under the provisions of Code §§ 43-3, -4 and -7 (Repl. Vol. 1970), he may file and undertake to enforce his own independent lien. *Knight* v. *Ferrante*, 202 Va. 243, 117 S.E.2d 283 (1960).

In a contract where particular provisions are inserted for the benefit of one of the parties, and those provisions are ambiguous, they are to be construed most strongly against the favored party. *Standard Ice Co.* v. *Lynchburg Ice*, 129 Va. 521, 529, 106 S.E. 390, 392 (1921). The rule is particularly applicable where the ambiguous provision is alleged to constitute a waiver of the right to file a lien, as it is presumed, in the absence of clear evidence to the contrary, that one has not precluded himself from exercising a right granted by statute. Annot., 76 A.L.R.2d 1087, 1100 (1961). Moreover, resolution of doubts against waiver "applies with additional and far greater force when the general contractor's agreement is invoked to cut off the lien rights of subcontractors . . . who were not parties to it." *Aste* v. *Wilson*, 59 P. 846, 848 (Colo. App. 1900).

■ Accordingly, we hold that subcontractors and materialmen are not deprived of their independent liens unless

---

[2] "Article 4 — Receipts & Releases of Liens

The Owner may require the Contractor to attach to each request for payment its acknowledgement of payment and all subcontractors' and materialmen's acknowledgements of payment for work done and materials, equipment and fixtures furnished through the date covered by the previous payment. Concurrently with the final payment, the Owner may require the Contractor to execute a waiver or release of lien for all work performed and materials furnished hereunder, and may require the Contractor to obtain similar waivers or releases from all subcontractors and materialmen."

they expressly waived their lien rights or expressly accepted, or by clear implication, agreed to be bound by the general contractor's stipulation in the general contract against liens. *See Baker Sand & Gravel Co.* v. *Rogers Plumbing & H. Co.*, 228 Ala. 612, 154 So. 591 (1934); *Morin Lumber Co.* v. *Person,* 99 P.2d 206 (Mont. 1940); *Miles* v. *Coutts,* 20 Mont. 47, 49 P. 393 (1897); *Walker* v. *Collins Const. Co.*, 236 N.W. 334 (Neb. 1931); 53 Am. Jur. 2d, *Mechanic's Liens,* § 336 (1970).

In view of the vague phraseology and ambiguities found in the general contract and the subcontracts we cannot say that the subcontractors accepted or agreed to be bound by the waiver of liens agreed to by the general contractor. Any implied waiver of rights must be clearly shown, *Coleman* v. *Nationwide Life Ins. Co.*, 211 Va. 579, 583, 179 S.E.2d 466, 469 (1971), and it is not clearly shown in this case. Therefore, we hold that subcontractors who filed and perfected their independent liens against the Owners' properties are not barred from enforcing these liens.

There were no written contracts between Spring and the materialmen who furnished materials for the construction projects. Counsel for VNB conceded before us, as he did in the trial court, that if both notice to the materialmen and acceptance by them of the general contractor's stipulation against liens are required to deprive them of their liens, the liens are not barred, because there is no evidence of acceptance. As we have herein approved the rule that neither subcontractors nor materialmen will lose their liens unless they expressly waive them or expressly or by clear implication agree to be bound by the general contractor's stipulation against liens, the perfected liens of the materialmen are valid and enforceable.

For the reasons assigned the decrees of the trial court are reversed as to the general contractor and subcontractors claiming under and relying on the general contractor's mechanic's liens, and affirmed as to subcontractors and materialmen claiming under independent liens filed and perfected by them. As the status of the lien of the architects, appellees Lazlo Aranyi and Thomas G. Murrell & Associates, may depend upon an independent contract not found in the record, we express no opinion as to their lien. The case is remanded for further proceedings consistent with the views herein expressed.

*Affirmed in part; reversed in part; and remanded.*