## CIRCUIT COURT OF THE CITY OF WINCHESTER

Robinson

v.

Herrell Construction Co. et al.

August 28, 1986

Case No. (Chancery) 85-CH-116

By JUDGE HENRY H. WHITING

The Court must pass upon a property owner's motion to dismiss a bill of complaint brought by a subcontractor seeking to enforce his mechanic's lien against an owner. The motion to dismiss is predicated upon the principles of *res judicata* and the fact that the contractor has been adjudicated to be owed nothing by the owner in an earlier action at law in the Circuit Court of Frederick County, Virginia.

The resolution of this issue involves a consideration of: (1) the statutory authorization of an independent lien to be asserted by a subcontractor, (2) the limitation in that same statute of the amount of that lien to the sums owed by the owner to the general contractor at the time the independent lien is asserted, and (3) the principles of *res judicata*.

The doctrine of *res judicata* applies:

> not only to the parties themselves, but to their privities, and to others so identified with them as to represent the same legal right, or one through whom the claim or liability, as the case may be, is wholly derived. § 357,

*Burks Pleading and Practice* (4th ed.), page 673.

The thrust of the subcontractor's claim is that: "In Virginia. . . a subcontractor can have a lien which is derivative of the general contractor or a lien which is totally separate and independent thereof," citing *VNB Mortgage Corp.* v. *Lone Star Industries, Inc.,* 215 Va. 366 (1974). *Lone Star* involved the issue of whether the subcontractor had contractually waived his right to file a mechanic's lien in his contract by incorporating by reference the terms of the contract between the general contractor and the owner, including the general contractor's explicit waiver of the lien. The Court held that there was no such waiver because the reference was not sufficiently definite to do so since any contractual provision for the benefit of one party which is ambiguous should be construed most strongly against the favored party, particularly where it refers to a waiver by the other party of a statutory right to file a lien. *Id.* at 371. The Court does refer to the three different remedies a subcontractor has in the protection of his claim for materials and labor incorporated in the owner's property, pointing out that Virginia's statute:

> permit[s] the lien to be filed not only by the general contractor but also independently by each subcontractor and materialman *to the extent that monies are payable by owner to general contractor.* The subcontractor, under the provisions of Code § 43-18 (Repl. Vol. 1970) may rely upon the general contractor's lien or, under the provisions of Code §§ 43-3, -4 and -7 (Repl. Vol. 1970) he may file and undertake to enforce his own independent lien. *Knight* v. *Ferrante,* 202 Va. 243, 117 S.E.2d 283 (1960). *Ibid.* (Italics added.)

*Knight* v. *Ferrante* required an owner to pay the subcontractor's independent mechanic's lien even though the general contractor did not finish the work because the owner failed to prove the amount it would have cost to finish the contract and thus limit the subcontractor's claim to that within the total amount due under the contract. The Court said:

[U]nder Code § 43-18, the subcontractor may claim through the general contractor, he is not obliged to do so. Under § 43-7 the subcontractor may perfect his own independent lien. As is said in Burks Pleading and Practice, 4th Ed., § 460, p. 893, "If the subcontractor wishes to take out his independent lien, he may do so by doing just what the general contractor is required to do. . . but the amount secured by this lien cannot exceed the amount in which the owner is indebted to the general contractor at the time the notice is given, or shall thereafter become indebted to the general contractor upon his contract with the general contractor for such structure. . . ."

It is conceded that in the present case the subcontractors perfected their respective liens and gave notice thereof to the owners in the manner required by Code § 43-7. Having done so, each thereby obtained a lien on the property independent of the lien of the general contractor, the only limitation being that the amount of the subcontractor's lien, as § 43-7 says, shall not exceed the amount in which the owners were indebted to the general contractor at the time the notice was given, or thereafter became indebted to the general contractor upon his contract for the construction of the building. Thus, except as to the limitation on the funds to which the subcontractors may look for payment of their claims, they do not claim through the general contractor, but independently of him. *Id*. at 249-250.

The third remedy the subcontractor may use is to make the owner personally liable for his claim by giving a preliminary notice to the owner prior to doing the work. That method is established in Virginia Code § 43-11 and described beginning on page 895 of *Burks Pleading and Practice* (4th ed.), § 460. However, the subcontractor has not complied with that statute nor does he claim his lien thereby.

His claim is of an independent lien afforded every

subcontractor under the provisions of Virginia Code § 43-3 but:

> The amount for which a subcontractor may perfect a lien under this section shall not exceed the amount in which the owner is indebted to the general contractor at the time the notice is given. . . [and] it shall be an affirmative defense. . . to a suit to perfect a lien of a subcontractor that the owner is not indebted to the general contractor. § 43-7, Virginia Code.

It is important to study the statutes under which any mechanic's lien is claimed since it does not exist at common law and is wholly a creature of statute. As the property owners point out in their memorandum, there are two classes of mechanic's liens, the "New York system" and the "Pennsylvania system." Those two systems are discussed at § 8, *Mechanic's Liens*, 53 Am. Jur. 2d, pages 524-525, in the following language:

> The prominent distinction between the two systems is this: Under the "New York system," the subcontractor cannot recover more than is due from the owner to the contractor; under the "Pennsylvania system," the original contract, or payment to the original contractor, is no defense to a claim of a subcontractor. . .
>
> Under the "New York system" the lien of a subcontractor or a materialman depends on and is limited by the amount remaining due to the general contractor at the time of, or which may become due after, the service on the owner by the subcontractor or materialmen of notice that he has already furnished, or is about to furnish, labor or material for the building or improvement. Such statutes give a derivative lien, whereby such persons are substituted to the rights of the general contractor.

Continuing, the commentator points out:

Moreover, in at least one state [Virginia, as noted by the citation] which generally follows the New York system a subcontractor or materialman who does not contract with the owner is given an option of having a derivative or an independent lien. The statutes of such state declare that a perfected lien of a general contractor inures to the benefit of a subcontractor, materialman, or laborer who has not perfected a lien but who has given notice of his claim to the owner, and also declare that such person may also perfect his own independent lien in an amount not to exceed the amount in which the owners are indebted to the general contractor at the time the notice was given or thereafter become indebted to the general contractor upon his contract for the construction of the building. (Citing *Knight* v. *Ferrante*, 202 Va. 243.) *Id.* at 526.

In the two cases relied upon by the subcontractor for the proposition that the general contractor cannot prejudice the right of the subcontractors, the owners attempted to inject factors other than payment of money in discharge of the general contractor's claim and lien. In the Kentucky case, decided in the federal court in Kentucky under the Kentucky statute, *General Trust Co.* v. *Richmond, N., I. & B. R. Co.*, 68 F. 90 (1895), a railroad company tried to pay the general contractor in its own corporate stock in discharge of the obligation and thereby eliminate both the general contractor's lien and the lien of a subcontractor which was said to be independent of the general contractor under the Kentucky statute. In the other case, *J. L. Purcell, Inc.* v. *Libby*, 111 Conn. 132, 148 A. 225 (1930), the Court held that an owner could not credit other amounts the contractor owed him for other transactions with the amount he owed the contractor on the building contract to the prejudice of the subcontractors because that was not a payment made in good faith and:

[T]he agreement between the owner and the contractor was designed to prevent the subcontractors from getting any pay for materials and labor supplied by them to the contractor to

put in the owner's building, which would and did enrich the owner. This was a very clear case of bad faith by the owner toward these subcontractors. *Id.* at 140.

The fallacy in the subcontractor's argument is his failure to recognize that although the statute does give him a lien independent of the lien of the general contractor, its express terms preclude the assertion of that lien if its payment would exceed the amount due by the owner to the general contractor as of the date of the assertion of the lien. In this case the pleadings show that the subcontractor did not give his notice of lien until *after* he had done all the work and *after* the general contractor had left the job and earned no more money. While the owner has the affirmative burden of showing that he was not indebted to the general contractor in any sums which were paid after the notice or which accrued after the notice, *Knight, supra,* if the evidence shows that no sums were earned by the general contractor after the notice was given, the express terms of the statute preclude the subcontractor from recovering any sums for which "the owner is not indebted to the general contractor."

I construe the statute as one which makes the subcontractor's claim a derivative one to that of the general contractor up to the time the lien is asserted and therefore subject to any *bona fide payment* by the owner to the general contractor or to any *bona fide* adjudication of the owner's liability to the general contractor up to the time of the assertion of that independent lien. I also see both the claim and the lien as absolutely independent of the general contractor's claim as to sums which accrue to the general contractor after the assertion of that lien and, in a sense, an adaptation of the contractor's third remedy described at page 895 of *Burks Pleading and Practice* (4th ed.) and enunciated in Virginia Code Section 43-11. Thus, if the lien had been filed *after* a *bona fide* adjudication of the owner's lack of liability

to the contractor, the principles of *res judicata* would apply.[1]

The owner contends that the previous adjudication in the case in the Circuit Court of Frederick County "is not of less solemnity nor less to be honored than a perfected security interest to establish that there is no existing indebtedness between owner and general contractor to support the mechanic's lien," after citing and quoting *Kayhoe Construction Corp.* v. *United Virginia Bank*, 220 Va. 285 (1979). *Kayhoe* held that a payment to a subcontractor bound his subcontractor and precluded the subcontractor from asserting any claim against the owner or from imposing a trust upon those funds, which the subcontractor had assigned to a bank "in the absence of fraud or wrongful conversion, Code § 43-19 does not affect disbursements against the contract price made before the lien notice is given." *Id.* at 290. The difficulty with the *Kayhoe* analogy is that it involved a *payment with funds*; this judicial determination was a finding of non-liability only because the general contractor had failed to comply with discovery requirements. The general contractor's claim was not adjudicated in any way on its merits and the issue was tried solely on the claim asserted by the owners in the motion for judgment for damages against the contractor, the counterclaim for sums due to the contractor by the owner to it having been adjudicated by default only. While the owners called this an attempt "to relitigate those issues which have already been determined by judgment in the action previously brought in the Circuit Court of Frederick County" (memo, page 8), those issues have not actually been determined; they were lost by default in failing to file the required discovery responses. The Frederick County file has been inspected and discloses that a motion was filed by the owner asking to join this claimant in an amended motion for judgment, but *no action was ever taken on that motion.* A praecipe was filed returnable March 13,

---

[1] I do not have to decide whether an adjudication by default was binding under those circumstances since this independent lien was filed BEFORE the owner-contractor's case was resolved. What we have to resolve is whether a default judgment against the general contractor secured AFTER notice of the subcontractor's lien has been filed and a suit to enforce it is pending deprives the subcontractor of his day in court.

1985, with a copy sent only to counsel for the contractor, none was sent to the subcontractor or his counsel. No order was ever entered permitting (or denying) the filing of this amended motion for judgment, and the next order in the file, reflecting a hearing apparently on April 24, 1985, entered on August 7, 1985, set the case for trial September 18 through 20, requiring the completion of discovery by August 7th. The matter was apparently continued because of the contractor's bankruptcy and a default order was entered on April 22, 1986, precluding the contractor from asserting his counterclaim because of the failure of the contractor to answer the interrogatories.[2] Nowhere in this file do I find any notice to the subcontractor and therefore I do not believe he can be bound by the principles of *res judicata* in this particular case. Attention is called to one of the most important principles to be kept in mind in applying the doctrine of *res judicata*:

> The expedient upon which the policy is based, is subordinate to the principle that every litigant is entitled to a fair trial on the merits. . . . Failure on the part of the profession to recognize the basic fact that the application of *res judicata* is a matter of policy which will never be indulged to the extent of defeating the ends of justice, is, in the opinion of the author, largely responsible for the attitude of perplexity over the lack of uniformity in the decided cases. *Burks Pleading and Practice* (4th ed.), § 357, page 672.

Although the subcontractor is limited in the claim he can assert as a mechanic's lien to the amount owed by the owner as of the date the lien was asserted, as a matter of policy I do not believe a court should visit a general contractor's default in supplying information in his law suit against the owner upon a subcontractor who is not a party to the litigation and had no opportunity to make good that default by showing there was a balance due on the contract and the owner should not recover on

---

[2] This ruling assumes the Frederick County file will be properly made a part of this record.

his claim for damages. This is not to say that: (1) the subcontractor might not have been bound had there been a truly adversarial litigation between the general contractor and the owner, nor (2) that he might not have been joined as a party defendant in the original suit (and therefore bound) had the matter been fully presented to the judge in that case, including opportunity for argument by the subcontractor in favor of his right to intervene.

If counsel agree as to incorporation of the former record in this one, an appropriate decree may be entered overruling the motion for summary judgment.