*Amerisure Ins. Co. et al. v. Selective Ins. Grp. et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of May, two thousand twenty-three.

PRESENT:  JOHN M. WALKER, JR.,
          REENA RAGGI,
          MICHAEL H. PARK,
                    *Circuit Judges*.

------------------------------------------------------------------------

AMERISURE      INSURANCE      COMPANY,
AMERISURE MUTUAL INSURANCE COMPANY,

    *Defendants-Third-Party-Plaintiffs-Appellants*,

          v.               No. 21-1516

SELECTIVE  INSURANCE  GROUP,  INC.,  DBA
SELECTIVE    INSURANCE    COMPANY    OF
AMERICA,

    *Third-Party-Defendant-Appellee*.[1]

------------------------------------------------------------------------

---

[1] The Clerk of Court is respectfully directed to amend the caption accordingly.

APPEARING FOR APPELLANTS:   BRENDAN T. FITZPATRICK (Daniel W. Gerber, Cara M. Nelson, *on the brief*), Gerber Ciano Kelly Brady LLP, Buffalo, NY.

APPEARING FOR APPELLEE:   STEVEN E. PEIPER, Hurwitz & Fine, P.C., Buffalo, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

In this appeal, Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively, "Amerisure") challenge the district court's rulings regarding an insurance coverage dispute between Amerisure and Selective Insurance Group, Inc. ("Selective"). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

## BACKGROUND

**I.   Relevant Contracts and Insurance Policies**

This insurance dispute arises out of an accident that occurred during the construction of a theater for Movie Tavern Theaters, LLC ("MTT") and Southern Theatres, LLC ("Southern") on land owned by the Hinsdale Road Group, LLC

("Hinsdale") and Cameron Group, LLC ("Cameron"). MTT, Hinsdale, and Cameron are collectively referred to as the "Owners." Pursuant to an August 7, 2015 contract (the "General Contract"), MTT and Hinsdale retained Eilerson Development Corporation ("EDC") to serve as the general contractor of the project. By way of a September 9, 2015 contract (the "Subcontract"), EDC subcontracted certain masonry work to C&D Laface Construction, Inc. ("C&D").

The General Contract and Subcontract each required EDC and C&D to obtain insurance policies. Section 11.1 of the General Contract required EDC to procure, *inter alia*, commercial liability insurance, with the Owners to be included as additional insureds for claims caused by EDC's negligent acts or omissions. *See* J. App'x 1505–06. Section 4.1(c) of the Subcontract required C&D to procure commercial general liability ("CGL") insurance, which would name EDC as an additional insured and which would be "primary and non-contributing so that [EDC's] policy will not respond until the limits under [C&D's] policy are exhausted." *Id.* at 1793. Finally, Section 4.1(d) of the Subcontract required C&D to procure commercial umbrella liability insurance "for at least $1,000,000 [that] shall be as broad as the primary General Liability . . . ." *Id.* Pursuant to these provisions in the General Contract and the Subcontract, EDC procured a CGL

3

policy and an umbrella policy from Amerisure, and C&D procured a CGL policy and an umbrella policy from Selective.

## II.    Procedural History

### A.    The Accident and Underlying Action

On November 5, 2015, a forklift operated by a C&D foreperson at the construction site seriously injured Shaun Atkinson, a C&D employee. On May 14, 2018, Atkinson and his wife sued EDC, Cameron, MTT, and Southern in New York Supreme Court. Selective defended EDC as an additional insured under the Selective CGL policy in that action (the "*Atkinson* Action"). Selective took the position, however, that: (1) the Owners were not additional insureds under the Selective policies; and (2) the Selective umbrella policy was excess over all other coverage available to EDC, including the Amerisure CGL policy.

In August 2022, the parties in the underlying action executed a settlement and funding agreement in which Amerisure and Selective each reserved their rights against and between each other.

### B.    The Insurance Action

In December 2018, Cameron and Hinsdale brought a separate action in New York Supreme Court seeking a defense and indemnity from EDC and Amerisure.

The case was removed on diversity grounds and was transferred to the Northern District of New York, after which EDC and Amerisure added C&D and Selective as third-party defendants. As relevant to this appeal, Amerisure and Selective each moved for summary judgment as to the additional insured status of the Owners and the priority of coverage between the Amerisure CGL and Selective umbrella policies. In a June 3, 2021 decision, the district court granted Selective's motion as to both issues, finding that (1) the Owners are not additional insureds under the Selective policies, and (2) the Amerisure CGL policy is primary to the Selective umbrella policy as to the claims against EDC. This appeal followed.

**STANDARD OF REVIEW**

This Court reviews *de novo* a district court's grant of summary judgment. *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002). Summary judgment is appropriate "when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006); *see also* Fed. R. Civ. P. 56(a).

**DISCUSSION**

On appeal, Amerisure argues that the district court erred in finding that the Owners are not additional insureds under the Selective policies and in concluding

that the Amerisure CGL policy is primary to the Selective umbrella policy as to EDC. For the reasons explained below, we reject Amerisure's arguments and affirm.

**I.     The Owners are not additional insureds under the Selective policies.**

In order for the Owners to qualify as additional insureds under the Selective policies, C&D must have agreed in writing — in the Subcontract or otherwise — to name the Owners as additional insureds. *See* J. App'x 778 (including as an additional insured under the Selective CGL policy "any person or organization whom [C&D] agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on [the] policy"); *id.* at 2205 (stating that "[a]ny additional insured under any policy of 'underlying insurance' will automatically be insured under [the Selective umbrella policy]").

The parties do not dispute that the text of the Subcontract does not itself require that C&D name the Owners as additional insureds.[2]     According to

---

[2] The parties also do not dispute that C&D and the Owners do not have to be in privity with each other in order for the Owners to qualify as additional insureds. *Cf. Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 31 N.Y.3d 131, 135 (2018) (privity required where policy recognized as an additional insured any person or entity "*with whom*" the named insured agreed to add as an additional insured in a written contract).

Amerisure, however, the Subcontract incorporated all of EDC's obligations under the General Contract — including Section 11.1.4 of the General Contract, the clause that required EDC to provide additional insured coverage to the Owners. *See id.* at 1505 ("The Contractor shall cause the commercial liability coverage required by the Contract Documents to include . . . the Owner . . . as [an] additional insured[] for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations . . . ."). In support of its incorporation argument, Amerisure notes that, in Section 5.3 of the General Contract, EDC promised the Owners that it would require subcontractors "to assume toward [EDC] all the obligations and responsibilities . . . which [EDC], by the Documents, assumes toward the Owner[s]," *id.* at 1495, and that Section 1.9 of the Subcontract states that "[t]he Subcontractor shall be bound by the terms of the Specifications, General Conditions and Supplemental Conditions and Addenda in the Contract between the Contractor and the Owner, shall confirm to and comply with the Drawings and Specifications and Addenda, and shall assume toward the Contractor all the obligations and responsibilities that the Contractor assumes toward the Owner," *id.* at 1792. Amerisure also cites a number of New York cases that it claims support its incorporation argument.

7

As an initial matter, we note that, pursuant to Section 7.1 of the Subcontract, EDC and C&D agreed that Virginia law — not New York law — would govern the interpretation of the Subcontract. Under New York choice-of-law rules, which are applicable in diversity cases such as this one that are brought in New York, "a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000). Since EDC has its principal place of business in Virginia, we conclude that the state selected in the Subcontract has sufficient contacts with the transaction, and that Virginia law governs the interpretation of the Subcontract. *See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,* 346 F.3d 360, 366 (2d Cir. 2003) ("sufficient contacts" requirement satisfied where one party to transaction has principal place of business in state selected).

Under Virginia law, Amerisure's incorporation argument is unavailing. The incorporation clause in the Subcontract does not require the subcontractor to assume all obligations of the general contractor, but only those relating to the nature or scope of the work undertaken by the subcontractor. In *VNB Mortgage Corporation v. Lone Star Industries*, *Inc.*, the incorporation clause, like the clause at

8

issue here, stated that the subcontractor "agree[d] . . . to be bound to the Contractor by the terms of the [general contract], general conditions, drawings and specifications, and to assume toward [the] Contractor all the obligations and responsibilities that the Contractor, by those documents, assume[d] to the Owner." 215 Va. 366, 369 (1974). The Supreme Court of Virginia held that, notwithstanding this broadly worded incorporation clause, a subcontractor was not bound by the general contract's waiver of liens provision because that provision did not pertain to the nature of the work to be performed under the subcontract. *See id.* at 370 (explaining that "the subcontractor was put on notice of the general contract between the [o]wners and [general contractor], and of the plans and specifications for the projects, but he accepted them only as to the nature of the work and materials required of him," and the incorporation of documents was thus "restricted to that purpose only"). The court also noted that, "[i]n no part of the subcontract . . . is there any express waiver by the subcontractor of his right to file a mechanic's lien," and that, to the contrary, "the possibility that lien waivers might . . . be required of subcontractors" was evidenced by the contracts at issue. *Id.* at 370–71.

*VNB* squarely applies here. As with the waiver of liens provision in *VNB*, the insurance clause in the General Contract here does not directly relate to the nature or scope of the masonry work to be performed by C&D. And, as was true of the waiver of liens provision in *VNB*, there is no mention elsewhere in the Subcontract that C&D is required to name the Owners as additional insureds. In fact, Section 4 of the Subcontract, which describes C&D's obligations with respect to procuring insurance, specifies that EDC must be named as an additional insured, but omits any reference to adding the Owners as additional insureds. It is also noteworthy that the General Contract, in a section entitled "Subcontractual Relations," appears to limit a subcontractor's assumption of EDC's obligations to those relevant to the scope of work performed by such subcontractors. *See* J. App'x 1495 ("By appropriate agreement, . . . the Contractor shall require each Subcontractor, *to the extent of the Work to be performed by the Subcontractor*, to be bound to the Contractor by the terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner . . . ." (emphasis added)). Under

10

these circumstances, we conclude that the Subcontract did not incorporate by reference EDC's obligation to name the Owners as additional insureds.[3]

We would reach the same result even if we were to apply New York law. New York law, like Virginia law, narrowly construes incorporation clauses in subcontracts when they purport to bind a subcontractor to provisions in the general contract that do not relate to the "scope, quality, character[,] and manner of the work to be performed by the subcontractor." *See Persaud v. Bovis Lend Lease, Inc.*, 93 A.D.3d 831, 833 (2d Dep't 2012) (holding that an indemnity provision in a general contract was not incorporated by reference into a subcontract, and explaining that, "under New York law, incorporation clauses in a construction subcontract, incorporating prime contract clauses by reference into a subcontract, bind a subcontractor only as to prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor" (internal quotation marks omitted)).[4]

---

[3] *Uniwest Construction, Inc. v. Amtech Elevator Services, Inc.*, 280 Va. 428 (2010), *withdrawn in part on reh'g on other grounds*, 281 Va. 509 (2011), is not to the contrary. In that case, the Supreme Court of Virginia concluded that the subcontract's incorporation clause imposed a duty on the subcontractor to defend and indemnify the general contractor, but the court did not address the subcontractor's duty with respect to the owner — which is the issue we address here. The court also noted other facts distinguishable from those here, including that the subcontract's incorporation clause stated that the specifications were incorporated "for all intents and purposes." *Id.* at 444–45.

[4] The cases cited by Amerisure are largely inapposite, addressing issues such as the assignability of contracts, or the principle that parties are bound by the contracts they sign. *See, e.g., Travelers Prop. Cas. Co.*

In sum, because C&D did not assume EDC's obligation to name the Owners as additional insureds, the Owners are not additional insureds under the Selective policies. We affirm the ruling of the district court as to this issue.

**II.    The Amerisure CGL policy is primary to the Selective umbrella policy.**

Amerisure also challenges the district court's determination that the Amerisure CGL policy provides coverage before the Selective umbrella policy. Neither party disputes that the Selective CGL policy is primary to the other three policies. Consistent with this understanding, Selective defended EDC (as an additional insured) in the underlying *Atkinson* Action under that policy. The sole question is which policy — the Amerisure CGL policy or the Selective umbrella policy — provides coverage *next* to EDC.

Under New York law,[5] a court "determin[ing] the priority of coverage among different policies . . . must review and consider all of the relevant policies at issue," including each policy's so-called "other insurance" or "excess coverage" provisions. *See BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 716 (2007). "[W]here there are multiple policies covering the same risk, and each

_of Am. v. Burlington Ins. Co._, 180 A.D.3d 604 (1st Dep't 2020); _Daniel Gale Assocs., Inc. v. Hillcrest Ests., Ltd._, 283 A.D.2d 386 (2d Dep't 2001).

[5] The parties do not dispute that New York law governs the interpretation of the insurance policies at issue.

generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance." *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 51 N.Y.2d 651, 655 (1980). This rule is inapplicable, however, "when its use would distort the meaning of the terms of the policies involved," which meaning "turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of its provision concerning excess insurance." *State Farm Fire & Cas. Co. v. LiMauro*, 65 N.Y.2d 369, 374 (1985). Generally, "[a]n umbrella policy, which covers multiple risks but offers no primary coverage as to any of them and provides that it 'shall be in excess of, and shall not contribute with' other collectible insurance covering a loss available to the insured, except such as in excess of the limits of the umbrella policy, is not required to contribute toward a loss until the limits of a[n underlying] liability policy . . . have been exhausted." *Id.* at 371.

Here, a comparison of the policies' "other insurance" clauses indicates that the Amerisure CGL policy is primary to the Selective umbrella policy. Indeed, Section IV.4 of the Amerisure CGL policy provides that the policy "is primary," except if, *inter alia*, "other primary insurance [is] available to [EDC] . . . for which

13

[EDC has] been added as an additional insured." J. App'x 1623. The Selective umbrella policy, by contrast, provides that it "is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis," unless such other insurance is "specifically written as excess over this Coverage Part." *Id.* at 883. Thus, a straightforward comparison of the policies indicates that the Selective umbrella policy — which is not a "primary insurance" policy — is excess over the Amerisure CGL policy.

Amerisure makes three principal arguments in urging the Court to reach a contrary result: First, Amerisure argues that the aforementioned "other insurance" provision at Section IV.4 of the Amerisure CGL policy was "deleted and replaced" by a provision found in Section 3(f) of the "Contractor's Blanket Additional Insured Endorsement" (the "Endorsement") to the Amerisure CGL policy. *See id.* at 1642–44. Section 3(f) of that Endorsement states:

> **f. SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS**, paragraph **4. Other Insurance** is deleted and replaced with the following:
> **4. Other Insurance.**
> Any coverage provided in this endorsement is excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent, or on any other basis unless the written contract, written agreement, or certificate of insurance requires that this insurance be primary,

14

in which case this insurance will be primary without contribution from such other insurance available to the additional insured.

*Id.* at 1644. At first glance, this provision may appear to "delete" and "replace" the provision at Section IV.4. From the context, however, it is clear that this replacement provision applies only to additional insureds, not to named insureds under that policy. The Endorsement's title — "Contractor's Blanket Additional Insured Endorsement" — references additional, not named, insureds, and the replacement language references "other . . . insurance available to the additional insured." *Id.* Since EDC is a *named* insured under the Amerisure CGL policy, not an additional insured, this Endorsement and its "other insurance" provision have no application to the priority of coverage dispute at issue here.

Amerisure next turns to the Subcontract's insurance clause, which required C&D to procure CGL insurance that would be "primary and non-contributing" to any insurance procured by EDC. *Id.* at 1793. Because that insurance clause also required that C&D procure umbrella insurance "as broad as the primary General Liability" insurance, Amerisure argues that the umbrella policy must also be primary and non-contributing. This argument is not persuasive, however, because the "as broad" language invoked by Amerisure is more easily understood

15

to qualify only the scope of coverage (*e.g.*, what risks are covered), not the priority of coverage. In any event, Amerisure does not sufficiently explain why the language of the Subcontract, in the face of otherwise unambiguous language of the Selective umbrella policy's "other insurance" clause, should control here.

Amerisure's final argument is that C&D's agreement to indemnify EDC — found in Section 5.1 of the Subcontract — should be transferred to Selective (as C&D's insurer), which would *effectively* require the Selective umbrella policy to provide coverage prior to that in the Amerisure CGL policy. In support, Amerisure cites *Century Surety Company v. Metropolitan Transit Authority*, a recent case in which a panel of this Court, applying New York law, concluded that an indemnity agreement in a trade contract between insureds could override the terms of an insurance policy concerning priority of coverage. *See* No. 20-1474-CV, 2021 WL 4538633, at *3 (2d Cir. Oct. 5, 2021) (citing *Indem. Ins. Co. of N. Am. v. St. Paul Mercury Ins. Co.*, 74 A.D.3d 21 (1st Dep't 2010); *Arch Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 175 A.D.3d 437 (1st Dep't 2019)). The animating principle in *Century Surety*, and the cases on which it relied, is judicial economy — that is, that an indemnitee's insurer should not have to bring a separate suit to enforce an indemnity agreement that would nullify the court's earlier decision regarding

16

priority of coverage. *See id.* at \*4 (predicting that the New York Court of Appeals would agree that "the parties' rights and obligations based upon both the terms of the [relevant insurance policies] and the underlying indemnity agreement should be determined in one action").

While we do not disagree with the reasoning of our colleagues in *Century Surety*, we find that case to be distinguishable from this one for two reasons:

First, Amerisure did not raise the indemnity argument before the district court. While EDC's third-party complaint against C&D did assert indemnity-related claims against C&D, *see* No. 5:19-cv-285-LEK-ML, Dkt. No. 15, at 5, 7 (N.D.N.Y. June 28, 2019), EDC, Amerisure, and Selective subsequently entered into a stipulation of discontinuance with respect to all claims against C&D, *see* No. 5:19-cv-285-LEK-ML, Dkt. No. 28 (N.D.N.Y. Dec. 16, 2019). The fact that Amerisure is attempting to resurrect abandoned indemnity-related claims for the first time on appeal underscores why judicial economy — the principle animating *Century Surety* — undercuts Amerisure's position here.

Second, and more importantly, the *Atkinson* court affirmatively held that the indemnity provision is void under Virginia law. *See Atkinson v. Eilerson Development Corp. a/k/a EDC*, N.Y. Sup. Ct., Onondaga Cty., Index No. 004808/2018,

Docket No. 354, at 4–10, 26–28 (holding that the indemnity provision is void under § 11-4.1 of the Virginia Code on public policy grounds because the provision does not contain an exception for EDC's negligence). EDC initially appealed but abandoned this appeal after the parties settled in August 2022. Amerisure suggests that it is not bound by the *Atkinson* court's determination regarding the validity of the indemnity provision because it was not a party to that litigation. But Amerisure provides no support for this assertion and, in any case, offers no credible reason why we would reach a different conclusion than the *Atkinson* court if we were to assess the validity of the indemnity provision anew. Amerisure's sole argument regarding the validity of the indemnity agreement is that New York law, not Virginia law, should apply in construing the Subcontract. But as we earlier explained, Virginia law applies to disputes arising from the terms of the Subcontract.

Under these circumstances, we conclude that *Century Surety* is distinguishable, that Amerisure's indemnity argument fails, and that a traditional priority of coverage analysis should prevail here. That traditional priority of coverage analysis, for the reasons described above, plainly shows that the

18

Amerisure CGL policy is primary to the Selective umbrella policy.  Accordingly, we affirm the district court as to this issue.

                              *       *       *

          For the foregoing reasons, the judgment of the district court is AFFIRMED.

                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, Clerk of Court