Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and Kinser, JJ., and Poff, Senior Justice

SHUTTLEWORTH, RULOFF
AND GIORDANO, P.C.

v.  Record No. 962538     OPINION BY JUSTICE CYNTHIA D. KINSER
                                October 31, 1997
R.J. NUTTER, II

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Jane Marum Roush, Judge Designate

At issue before this Court is the enforceability of a provision in an addendum to an employment contract entered into between Shuttleworth, Ruloff and Giordano, P.C. (Shuttleworth), a law firm, and R.J. Nutter, II (Nutter), who was both a stockholder and an employee of Shuttleworth. Because we find that the disputed addendum provision does not violate the Virginia Code of Professional Responsibility, we will reverse and remand for proceedings consistent with this opinion.

I.

On May 26, 1987, at the outset of his employment with Shuttleworth, Nutter signed an "Employment Agreement." Subsequently, on February 12, 1990, Shuttleworth and Nutter entered into an "Addendum To Employment Agreement." At that time, Shuttleworth was preparing to execute an eleven-year lease for new office space. The Addendum's stated purpose was to address Nutter's obligation pursuant to his personal guarantee of the lease. The Addendum provided that, in exchange for Nutter's personal guarantee, Nutter would receive a portion of the cash incentive being offered to Shuttleworth by the landlord of the leased property. However, should Nutter

leave his employment with Shuttleworth during the first five years of the lease, Nutter would have to refund a pro rata portion of his share of the cash incentive.[1]

Nutter had an additional obligation under the Addendum. Upon the voluntary or involuntary termination of his employment with Shuttleworth, he would remain liable on a monthly basis for his "proportionate share" of the lease payments.[2] The commitment to make lease payments was a "continuing obligation," commencing on the date of the lease and continuing through the end of the eleven-year lease term.

However, the obligation to make lease payments after termination of employment with Shuttleworth was not absolute. Nutter would not have been required to make payments if his termination was the result of death or disability, if he was appointed to the judiciary, or if he was terminated involuntarily by a non-unanimous vote of Shuttleworth's board

---

[1] Nutter's share was approximately $21,000. Since Nutter left Shuttleworth more than five years after the commencement of the lease, Nutter did not have to return any of the cash incentive. The validity of that particular provision in the Addendum is not at issue in this case.

[2] An employee's "proportionate share" was to be expressed in the form of a fraction. The numerator was to be the average of the employee's two years' gross receipts for the two fiscal years of Shuttleworth next preceding the date of termination. The denominator was to be Shuttleworth's average gross receipts for the two fiscal years of Shuttleworth next preceding the date of termination. This fraction was to then be multiplied by Shuttleworth's monthly lease payment. The evidence did not show the precise dollar amount of Nutter's "proportionate share" of the lease payments.

of directors.[3]  Most important to our determination here is the provision that the lease payments would continue after the first five years of the lease "only in the event that [Nutter] has entered into the active practice of law."

In September 1995, more than five years after commencement of the lease, Nutter terminated his employment with Shuttleworth.[4]  Following Nutter's termination, Shuttleworth filed a petition for declaratory judgment in the court below. In its petition, Shuttleworth requested the court to declare that the Addendum's lease payment provision requires Nutter to make monthly payments.  Shuttleworth also sought a judgment for the sum of all lease amounts "accruing and unpaid" by Nutter up until the time of final adjudication.

In response to Shuttleworth's petition, Nutter filed a motion for summary judgment pursuant to Rule 3:18.  In his motion, Nutter contended that the Addendum's lease payment provision was void as a matter of law because it violated the public policy stated in Disciplinary Rule (DR) 2-106(A) of the Virginia Code of Professional Responsibility.[5]  Specifically,

_____

[3]  Nutter's obligation under the Addendum's lease payment provision also ceased if Shuttleworth's landlord declared the office lease in default and called upon the personal guaranties.

[4] Currently, Nutter is engaged in the private practice of law in the Tidewater area.

[5] DR 2-106 (A) provides as follows:

> A lawyer shall not be a party to a partnership or employment agreement that restricts the right of a

3

Nutter argued that the provision was a financial disincentive to his continued practice of law. Nutter further contended that the challenged provision infringed on the public's right to obtain counsel of its choosing.

After considering briefs submitted by both parties as well as hearing oral argument, the trial court granted Nutter's motion for summary judgment. In explaining its rationale, the trial court stated:

> I do think that the provision of the agreement that says that partners who have withdrawn from the firm or shareholders who have withdrawn from the firm, have to pay their proportionate share of the lease obligation after the fifth year, only if they're engaged in the active practice of law, does run afoul of Rule 2-106(A) of the Virginia Code of Professional Responsibility and is therefore unenforceable as contrary to the public policy of Virginia.

Shuttleworth appeals.

## II.

We have often stated that "`[t]he parties' contract becomes the law of the case unless it is repugnant to some rule of law or public policy.'" Rash v. Hilb, Rogal & Hamilton Co., 251 Va. 281, 285, 467 S.E.2d 791, 794 (1996) (quoting Winn v. Aleda Const. Co., 227 Va. 304, 307, 315 S.E.2d 193, 194 (1984)). If a contract violates public policy, it is void and of no legal effect. Cohen v. Mayflower Corp., 196 Va. 1153, 1160, 86 S.E.2d 860, 864 (1955); Wallihan v. Hughes, 196 Va.

lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.

4

117, 124, 82 S.E.2d 553, 558 (1954). However, "the law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes, and `courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.'" Jessee v. Smith, 222 Va. 15, 17-18, 278 S.E.2d 793, 795 (1981) (quoting Ryan v. Griffin, 199 Va. 891, 895, 103 S.E.2d 240, 244 (1958)).

In ruling on Nutter's motion for summary judgment, the circuit court found that the contested provision of the Addendum is contrary to public policy because it violates DR 2-106(A). Accordingly, the court declared the provision unenforceable. In effect, the court used the disciplinary rule to measure whether the contested provision violates public policy, thereby elevating DR 2-106(A) to the status of decisional or statutory law. We question the propriety of equating the force of a disciplinary rule with that of decisional or statutory law in light of our decisions in Carter v. Williams, 246 Va. 53, 60, 431 S.E.2d 297, 301 (1993), and Ayyildiz v. Kidd, 220 Va. 1080, 1085, 266 S.E.2d 108, 112 (1980). In those cases, we held that the Code of Professional Responsibility does not provide the basis for a private cause of action. However, for the purpose of this decision, we assume, without deciding, that a disciplinary rule may properly be considered in determining the public policy of this

Commonwealth and conclude that the contested provision of the Addendum does not violate DR 2-106(A).

An examination of the purpose behind DR 2-106(A), as well as other jurisdictions' application of similar provisions, supports our conclusion that the Addendum's lease payment provision does not violate DR 2-106(A). The objective of DR 2-106(A) is to make attorneys fully available to the public. In Jacob v. Norris, McLaughlin & Marcus, 607 A.2d 142 (N.J. 1992), the court explained the purpose of a disciplinary rule similar to DR 2-106(A):

> The history behind the [rule] and its precursors reveals that the [rule's] underlying purpose is to ensure the freedom of clients to select counsel of their choice, despite its wording in terms of the lawyer's right to practice. The [rule] is thus designed to serve the public interest in maximum access to lawyers and to preclude commercial arrangements that interfere with that goal.

Id. at 146.

Given this purpose, courts in other jurisdictions have applied rules of professional conduct, similar if not identical to DR 2-106(A), to prohibit agreements that impose financial disincentives, as opposed to explicit restrictions, on a withdrawing partner's competition with the former firm. See Stevens v. Rooks Pitts & Poust, 682 N.E.2d 1125, 1132 (Ill. 1997) (holding that provision requiring departing lawyer to forego compensation if he competed with firm in certain geographic area was unenforceable and in contravention of public policy underlying disciplinary rule); accord Pierce v.

6

Hand, Arendall, Bedsole, Greaves & Johnston, 678 So. 2d 765, 769 (Ala. 1996); Jacob v. Norris, McLaughlin & Marcus, 607 A.2d at 148–49; Denburg v. Parker Chapin Flattau & Klimpl, 624 N.E.2d 995, 999 (N.Y. 1993); Gray v. Martin, 663 P.2d 1285, 1290–91 (Or. Ct. App. 1983); Spiegel v. Thomas, Mann & Smith, P.C., 811 S.W.2d 528, 531 (Tenn. 1991); Whiteside v. Griffis & Griffis, 902 S.W.2d 739, 743–44 (Tex. App. 1995). But see Howard v. Babcock, 863 P.2d 150, 160 (Cal. 1993). Unlike the Addendum's lease payment provision, the purpose of the agreements in these cases was to restrict competition. In order to accomplish that purpose, they imposed monetary penalties if the withdrawing attorney practiced law within a particular geographic area, practiced a particular kind of law, or represented former clients of the firm.

In contrast, the intent of the Addendum's contested provision was not to restrict Nutter's competition with Shuttleworth if he left the firm and continued to practice law; rather, it was to insure that Shuttleworth had the financial means with which to make the lease payments. The terms of the lease payment provision evidence such an intent. First, the provision does not contain any restrictions common to noncompetition agreements. Nutter's obligation to pay his proportionate share of the monthly lease payments was not triggered by his practice of law as to geographic area, subject matter, or clientele. Second, during the first five years of

7

the lease, Nutter was obligated to pay his share if he left Shuttleworth for any reason, except death, disability, acceptance of a judicial position, or termination by a non-unanimous vote.  Thus, Nutter's obligation during the first five years of the lease was not contingent on his continued practice of law if he left Shuttleworth.  Accordingly, we find that the Addendum's lease payment provision does not contravene the purpose behind DR 2-106(A).

We, therefore, conclude that the Addendum's lease payment provision does not violate the literal terms of DR 2-106(A) or its underlying purpose.  Accordingly, we will reverse the judgment of the circuit court and remand this case for a trial on the merits consistent with this opinion.

<u>Reversed and remanded.</u>