## CIRCUIT COURT OF THE CITY OF NORFOLK

Denton D. Weiss

v.

E.V.M.S. Academic Physicians
and Surgeons Health Services
Foundation et al.

August 30, 2005

Case No. (Chancery) CH05-1362

BY JUDGE CHARLES E. POSTON

The Court today addresses the Defendants' demurrer to the Amended Bill of Complaint. As described in the Defendants' memorandum, the demurrer "is limited to attacking the existence of a defense in light of the plain language of the Non-Competition Contract, that Dr. Weiss can avoid his promise not to compete due to alleged breaches by EVMS of the Non-Competition Contract." For the following reasons, the Court sustains the demurrer.

*Facts*

A demurrer tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)). Additionally, on

demurrer, the court may consider the substantive allegations of the pleading in addition to any accompanying exhibit mentioned in the pleading. *Flippo v. F & L Land Co.*, 241 Va. 15, 16, 400 S.E.2d 156, 156 (1991) (citing Va. Sup. Ct. R. 1:4(i)). However, "a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988) (citations omitted).

On July 1, 2002, the Plaintiff and the Defendants executed a Standard Employment and Non-Competition Contract that contained in paragraphs 11-18 a Covenant not to Compete and Non-Solicitation Clause. At present, the Plaintiff remains in the Defendants' employ.

On May 5, 2005, the Plaintiff filed his original Bill of Complaint for Declaratory Judgment; on July 11, 2005, he filed an amended complaint. The Plaintiff asserts that, because the Defendants first violated material terms of the Contract, they cannot enforce its terms, particularly the Covenant not to Compete and the Non-Solicitation Clause. The complaint also alleges that both the Covenant not to Compete and the Non-Solicitation Clause are void as a matter of law.

In response, the Defendants filed the limited Demurrer on July 19, 2005. Specifically, the Defendants contend that paragraph 18 of the Contract, the "No Defense" clause, forecloses the Plaintiff's "first breach" claim.[1] That clause states that:

> The existence of any claim or cause of action of the Clinician [Dr. Weiss] against MCHR/EVMS and the Foundation, whether predicated on this Contract or not, shall not constitute a defense to the enforcement by MCHR/EVMS and the Foundation of the restrictions, covenants and agreements contained herein.

---

[1] To a lesser degree, the Defendants rely on paragraph 21 of the Contract, the "Severability Clause." That paragraph states, "The illegality, invalidity, or unenforceability of any provision hereof shall in no way affect the legality, validity, or enforceability of any other provision." The paragraph goes onto state that, in the event a provision is found illegal, unenforceable, or void, a legal provision as similar to the one struck as possible will be added. In his treatise, Williston notes that, although often used interchangeably, divisibility and severability are actually distinct legal concepts. Divisibility refers to "the effect of part performance upon a breach," and severability concerns "the effect of an invalid covenant on the remaining valid covenants in a contract." 15 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts*, § 45:2 (4th ed. 1990). Therefore, the severability clause is not in issue at this stage of the proceedings. Indeed, the Defendants only cite it to "highlight" the fact that the parties allegedly meant for the covenant not to compete to be separate from the rest of the proceedings. Memorandum in Support of Demurrer at 3.

The Demurrer does not challenge the Plaintiff's claim that the Covenant not to Compete and the Non-Solicitation Clause are void as a matter of law.

*Analysis*

### I. Parties May Stipulate that a Covenant Not to Compete will be Divisible from an Employment Contract

"When contract terms are clear and unambiguous, a court must accord those terms their plain meaning." *Quadros & Assoc. v. City of Hampton*, 268 Va. 50, 54, 597 S.E.2d 90, 93 (2004), *citing Standard Banner Coal Corp. v. Rapoca Energy Co.*, 265 Va. 320, 325, 576 S.E.2d 435, 437 (2003). Contracts may prove more favorable to one party than another. Nonetheless, "The extent of the duty and the limit of the right of a court is to construe and enforce all the provisions of valid contracts, as made by the parties." *Potts v. Mathieson Alkali Works*, 165 Va. 196, 224, 181 S.E. 521, 532 (1935). Virginia Courts, then, will enforce valid contracts, even if the enforcement works a hardship on one party.

The Court holds that parties to an employment contract may agree that a covenant not to compete will be enforceable even if the employer first breaches other provisions of the contract. In *Standard Laundry Service v. Pastelnick*, 166 Va. 125, 127, 130, 184 S.E. 193, 194, 195 (1936), cited by both parties, the Supreme Court of Virginia considered whether an employer who wrongfully discharged an employee could enforce a covenant not to compete against that employee. The employer contended that the covenant not to compete "was an independent one" effective upon "termination of his employment for any cause whatever." *Id.* at 130, 184 S.E. at 195. The court rejected that argument and stated, "The contract of employment was an entire and inseparable one." *Id.* The court concluded that the employer would "not be allowed to breach the contract by wrongfully discharging Pastelnick before the end of his term and then later hold him bound to the covenant under the contract." *Id.*

The Plaintiff argues that *Standard Laundry Service* favors his position because the employer was unable to enforce the covenant not to compete after first breaching the contract. However, the court's finding that the contract was "entire and inseparable" was essential to the holding in *Standard Laundry Service*. The court's language clearly suggests that, if the contract were not found "entire and inseparable," the employer would

have been able to enforce the covenant not to compete, despite its breach. *Standard Laundry Service*, 166 Va. at 130, 184 S.E. at 195.

The only other reported Virginia case directly on point is *Hilb, Rogal, & Hamilton Co. of Tidewater v. Jennings*, 32 Va. Cir. 514 (Chesapeake 1992). In that case, an employment agreement, which contained a covenant not to compete, specifically stated that "no covenant or provision shall be dependant upon any other covenant or provision unless so expressed herein." *Id.* at 515. The contract also provided for liquidated damages in the event of a wrongful discharge. *Id.* Concluding that the parties could not have intended for the employee to receive liquidated damages and be able to compete with the employer in the event of a wrongful discharge, the court held that the non-compete clause "was separate and independent of the other provisions of the Employment agreement." *Id.* at 515-16. Thus, the employer could enforce the terms of the covenant not to compete even if the employer had first materially breached the contract. *Id.*

Other courts and legal commentators have concluded that contracting parties may agree that the enforceability of a covenant not to compete will be independent of the other terms of an employment contract. In *Mansfield v. B. & W. Gas, Inc.*, 222 Ga. 259, 260-61, 149 S.E.2d 482, 484 (1966), the Supreme Court of Georgia rejected an employee's argument that a covenant not to compete was unenforceable because the employer terminated the employment without giving the required notice. The court relied on language in the covenant providing that it would be effective "regardless of who was at fault and regardless of any claims that either party might have against the other." *Id.* Likewise, the Court of Appeals of Kentucky has upheld a non-compete clause that specifically provided for enforceability if either party terminated the employment. *Eigelbach v. Boone Loan & Investment Co.*, 216 Ky. 69, 70-71, 287 S.W. 225 (1926). Williston also recognizes that a restrictive covenant may be severable from the rest of the employment contract if it contains "express language in the employment contract to the effect that the restrictive covenant is intended to be severable and that the employer is not to be barred from enforcing contract provisions by reason of a breach of any part of the contract." 15 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts*, § 45:14 (4th ed. 1990), *citing Mansfield*, 222 Ga. at 260–61, 149 S.E.2d at 484.

## II. The First Breach Defense is Inapplicable

The Plaintiff cites *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154, 541 S.E.2d 279, 285 (2001), and *Standard Laundry Service*, 166 Va. 125, 184 S.E. 193, for the proposition that the first party to breach a contract may not later seek to enforce the terms of that agreement. However, the decision in *Countryside Orthopaedics* was predicated on a finding that the obligations of the parties were part of one indivisible contract. *Countryside Orthopaedics*, 261 Va. at 152, 541 S.E.2d at 284. As already discussed, *Standard Laundry Service* did not involve a covenant not to compete divisible from the remainder of the employment contract. In fact, the Supreme Court of Virginia explicitly held that the contract was indivisible. *Standard Laundry Service*, 166 Va. 130, 184 S.E. 195.

Plaintiff also cites *Federal Ins. Co. v. Starr Electric Co.*, 242 Va. 459, 410 S.E.2d 684 (1991). In that case, the Supreme Court of Virginia ruled that a subcontractor could recover damages for work and material lost when a construction site burned. *Id.* at 469, 410 S.E.2d at 689. The defendant claimed that, in the contract, the subcontractor waived the right to recover from the general contractor and assumed the risk. *Id.* at 467-68, 410 S.E.2d at 688. The court held that, because the defendant had materially breached the contract, it could not enforce the waiver and assumption of risk clauses in the contract. *Id.* at 468, 410 S.E.2d at 688-89. Like the other cases that the Plaintiff cites, this contract did not contain a "No Defense" clause like that in the case at bar. The case, then, does not address the effect of a divisibility clause on other provisions of a contract, and, therefore, it does not address the legal issue in the case at bar.

## III. The "No Defense" Clause is Not Unconscionable or Void as Against Public Policy

Plaintiff also argues that the "No Defense" clause is unconscionable and void as against public policy. "While the law frowns upon unreasonable restrictions, it favors the enforcement of contracts intended to protect legitimate interests. It is as much a matter of public concern to see that valid engagements are observed as it is to frustrate oppressive ones." *Meissel v. Finley*, 198 Va. 577, 584, 95 S.E.2d 186, 191 (1956) (internal quotations omitted). Moreover, "the law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes, and courts are averse to holding

contracts unenforceable on the ground of public policy unless their illegality is clear and certain." *Shuttleworth, Ruloff and Giordano, P.C. v. Nutter*, 254 Va. 494, 498, 493 S.E.2d 364, 366 (1997) (internal quotations omitted). A contract provision will be illegal if it is "repugnant to some rule of law or public policy." *Id*. at 497, 493 S.E.2d at 366.

In this case, the "No Defense Clause is neither repugnant to any rule of law or public policy nor for an illegal purpose. Contrary to the Plaintiff's assertions, the Plaintiff did not waive any future rights. Indeed, he retained all of his rights and causes of action against the Defendants and was free to pursue them separately. The "No Defense" clause merely segregated those claims from the enforcement of the employment agreement. Consequently, no public policy is frustrated by this clause.

In Virginia, unconscionable agreements are contracts "no man in his senses and not under a delusion would make" or "no fair man would accept"; an unconscionable contract is so inequitable as to "shock the conscience." *Management Enterprises v. Thorncroft, Co.*, 243 Va. 469, 473, 416 S.E.2d 229, 231 (1992) (internal quotations omitted). In the present case, the Plaintiff received compensation from the Defendants and in exchange agreed to the terms of the Contract, including the Covenant not to Compete. While the Plaintiff may regret the bargain, it was hardly an agreement that "no man in his senses" would make. The effect of the "No Defense" clause may be harsh, but in light of the nature of the employment, it does not "shock the conscience." The court, then, cannot conclude that the "No Defense" clause is unconscionable.

## IV. The Appropriateness of a Demurrer

The Plaintiff argues that sustaining a demurrer at this stage of the proceedings would be inappropriate because it would require factual findings that the "No Defense" clause:

> is severable from the Contract, that the provision trumps not only the law, but the other provisions of the Contract, that it reflects the intent of the parties and a meeting of the minds, that there was sufficient consideration, that it is legal and not against public policy to waive future rights, that Dr. Weiss knowingly waived his legal rights, that [the "No Defense" clause] and the breaches alleged by Dr. Weiss are not sufficiently touching upon the restrictive covenant such that they can be segregated.

Many of the Plaintiff's contentions are legal questions that may be appropriately decided on demurrer. Whether the "No Defense" clause is "severable from the Contract," the effect of the provision, and its legality are questions of law.

Moreover, the pleadings do not support the Plaintiff's claim that the Court must decide factual issues to sustain the demurrer. The Amended Bill of Complaint did not allege that the Contract failed to reflect a "meeting of the minds," insufficient consideration, or that Dr. Weiss did not knowingly waive his legal rights. In contrast, paragraph 17 of the Contract[2] explicitly states that the Plaintiff examined the contract in detail, understood the burdens it imposed, entered into willingly, and had the opportunity to have the Contract reviewed by independent counsel. Therefore, despite the Plaintiff's assertions, the pleadings do not present any factual questions that the court must resolve to sustain the demurrer.

The remainder of the Plaintiff's objections to sustaining a demurrer at this stage misstate the issues. First, enforcement of the "No Defense" clause would not result in the Plaintiff's waiving any future rights. Under the Contract, the Plaintiff retains all rights to sue the Defendants if they breach the Contract. Paragraph 18 simply provides that the Plaintiff's exercise of his rights under the Contract would not prohibit the Defendants from enforcing the Covenant not to Compete. Likewise, whether the breaches touched upon the covenant not to compete is also irrelevant. If the "No Defense" clause is valid, then the Covenant not to Compete would be enforceable. Therefore, despite the Plaintiff's contentions, a demurrer is appropriate at this stage.

Plaintiff next contends that the "No Defense" clause is inapplicable by its very language. The clause states that any breach by the Defendants "shall not constitute a defense to the enforcement by MCHR/EVMS and the Foundation of the restrictions, covenants, and agreements contained herein." Plaintiff argues in his submission that this provision means that he may not use the Defendants' breaches "as a defense if *Defendant bring[s] suit* to enforce the restrictive covenants." Because Plaintiff brought the suit against the Defendants for a declaratory judgment, Plaintiff argues that the clause does not apply by its very terms. Plaintiff adopts a strained reading of that clause. Nothing in the clause states that it is effective only when the Defendants *bring a suit* to enforce the Covenant

---

[2] The Contract is affixed to the Amended Bill of Complaint, and the Court may consider its provision in deciding the demurrer. *Flippo*, 241 Va. at 16, 400 S.E.2d at 156 (1991) (citing Va. Sup. Ct. R. 1:4(i)).

not to Compete. Rather the plain language of the clause states that any breach of the Contract by the Defendants "shall not constitute a defense to the enforcement" by the Defendants of the Covenant not to Compete.

When interpreting the predecessor to the present declaratory judgment statutes, the Supreme Court of Virginia has noted, "The intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed." *Fairfield Development Corp. v. Virginia Beach*, 211 Va. 715, 717, 180 S.E.2d, 533, 534 (1971). If the Plaintiff's reading of the "No Defense" clause were correct, then the Plaintiff would have greatly expanded his rights by seeking a declaratory judgment. In essence, Plaintiff would be able to avoid the "No Defense Clause" merely by having filed suit for a declaratory judgment before the Defendants had an occasion to enforce the Covenant not to Compete.

In proceedings for a declaratory judgment, it is the Court's duty to "make binding adjudications of right." Va. Code Ann. § 8.01-184 (Michie 2000). The court should seek to adjudicate the parties' rights as they exist at present. If the Defendants sought to enforce the "No Defense" clause against the Plaintiff, the "No Defense" would prohibit the Plaintiff from defending that claim by alleging the Defendants first breached the Contract. Despite the Plaintiff's protestations, nothing in the clause limits its applicability to suits filed by the Defendants; rather, it covers all enforcements of the Covenant not to Compete, even hypothetical ones on a motion for declaratory judgment.

The Plaintiff also contends that a demurrer is not appropriate at this stage because the Contract is ambiguous. First, the Plaintiff states that the "No Defense" clause is ambiguous because it could be read to be inapplicable to this case or because its plain language is against public policy. Both of these contentions have already been discussed and rejected.

In Virginia, "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." *Doswell, Ltd. P'ship v. VEPCO*, 251 Va. 215, 222, 468 S.E.2d 84, 89 (1986), *quoting Renner Plumbing, Heating & Air Conditioning v. Renner*, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983). "Contracts are not rendered ambiguous merely because the parties or their attorneys disagree upon the meaning of the language employed to express the agreement" *Id.* The Court finds no ambiguity in the language at issue; it is, on the contrary, clear and unambiguous.

Second, the Plaintiff argues that, when read together, paragraphs 10(d) and 18, the "No Defense" clause, create an ambiguity. Paragraph

10(d) states that the Contract may be terminated "[a]t the [Plaintiff's] option if the Foundation violates the terms of this Contract." The Plaintiff contends that, if he terminated his employment pursuant to Paragraph 10(d), the Defendants could nonetheless compel the Plaintiff to continue to work by virtue of the "No Defense" clause. Plaintiff argues that the Defendants' breaches allowing him to terminate his employment under paragraph 10(d) would not prevent the Defendants from enforcing the employment agreement under the "No Defense" clause and thereby force the Plaintiff to continue in his present employment. This, the Plaintiff contends, creates an ambiguity because, if the Defendants first breached the Contract, one provision would allow the Plaintiff to terminate his employment, while the other could be used by the Defendants to force him to continue the employment.

In Virginia, courts will not order specific performance of an employment contract. *Campbell v. Rust*, 85 Va. 653, 666, 8 S.E. 664, 669 (1889); 1 *Michie's Jurisprudence of Virginia and West Virginia*, § 66 (2004); *see* U.S. Const., Amend. XIII, § 1 (prohibiting slavery or involuntary servitude). Clearly, the prospect of the Plaintiff's being forced to continue to work through the "No Defense" clause despite properly terminating his employment under paragraph 10(d) is a legal impossibility. If the Plaintiff terminated his employment under paragraph 10(d), nothing in the Contract would empower the Defendants to force the Plaintiff to continue working. There is no ambiguity between the clauses. Because paragraph 10(d) only deals with termination of employment, there is no other possibility for an ambiguity to arise with respect to that provision.

The language in the Contract concerning the Defendants' right to enforce the Covenant not to Compete despite any breaches of the Contract is clear and unambiguous. The Plaintiff's claim for relief on the ground that the Covenant not to Compete is unenforceable as a result of a first breach by the Defendants is foreclosed by the "No Defense" clause.

## Conclusion

In sum, the Court holds that the "No Defense" clause is a valid contractual clause and is not unconscionable or void as a matter of public policy. The Covenant not to Compete is divisible from the rest of the Contract, and the Plaintiff remains subject to it despite any alleged breach by the Defendants.