PRESENT: Hassell, C.J., Koontz, Kinser, Goodwyn, Millette, and Mims, JJ., and Lacy, S.J.

UNIWEST CONSTRUCTION, INC., ET AL.

v.   Record No. 091495

AMTECH ELEVATOR SERVICES, INC.,
N/K/A ABM AMTECH, INC., ET AL.

AMTECH ELEVATOR SERVICES, INC.,
N/K/A ABM AMTECH, INC., ET AL.

                                          OPINION BY
v.   Record No. 091496         JUSTICE WILLIAM C. MIMS
                                       September 16, 2010
UNIWEST CONSTRUCTION, INC., ET AL.

FEDERAL INSURANCE COMPANY

v.   Record No. 091521

AMTECH ELEVATOR SERVICES, INC.,
N/K/A ABM AMTECH, INC., ET AL.


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Marcus D. Williams, Judge

     In these companion appeals we consider whether Amtech

Elevator Services, Inc., now known as ABM Amtech, Inc.,

("Amtech") had a contractual duty to defend and indemnify

Uniwest Construction, Inc. ("Uniwest") in an action brought

against Uniwest by an injured Amtech employee and the estate of

a deceased Amtech employee.  We also consider whether Uniwest

was insured under Amtech's insurance policies.

            I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

                    A.   THE CONTRACT DOCUMENTS

The Fountains at Logan Square, L.L.C. ("Fountains")
executed a written agreement (the "Prime Contract") with
Uniwest in August 1999 to renovate a building Fountains owned
in Philadelphia, Pennsylvania.  The Prime Contract was drafted
using a form American Institute of Architects ("AIA") document
that included AIA's General Conditions of the Contract for
Construction (the "General Conditions").  Paragraph 3.18.1 of
the General Conditions obligated Uniwest to defend and
indemnify Fountains

> [t]o the fullest extent permitted by law . . .
> from and against claims, damages, losses and
> expenses, including but not limited to
> attorneys' fees, arising out of or resulting
> from performance of the Work, provided that such
> claim, damage, loss or expense is attributable
> to bodily injury, sickness, disease or death, or
> injury to or destruction of tangible property,
> (other than the Work itself) including loss of
> use resulting therefrom, but only to the extent
> caused in whole or in part by negligent acts or
> omissions of [Uniwest], a Subcontractor, anyone
> directly or indirectly employed by them or
> anyone for whose acts they may be liable,
> regardless of whether or not such claim, damage,
> loss or expense is caused in part by a party
> indemnified hereunder.

The General Conditions also obligated Uniwest to "require each
Subcontractor . . . to be bound to [Uniwest] by [the] terms of
the Contract Documents, and to assume toward [Uniwest] all the
obligations and responsibilities which [Uniwest], by these
Documents, assumes toward [Fountains]."

The renovations set forth in the Prime Contract included modernization of three existing passenger elevators and installation of a new service elevator.  Uniwest subcontracted this elevator work to Amtech in March 2000 by a written agreement (the "Subcontract") governed by Virginia law.  The Subcontract expressly incorporated the Prime Contract "to the extent not otherwise excluded or modified by the terms of th[e] Subcontract."  Paragraph 3 of the Subcontract amplified this obligation:

> [Amtech] agrees to be bound to Uniwest by all the terms of the [Prime Contract] and to assume towards Uniwest all of the obligations and responsibilities that Uniwest has by the [Prime Contract] assumed toward [Fountains].  All terms and conditions contained in the [Prime Contract] which, by the [Prime Contract] or by operation of law, are required to be placed in [the] Subcontract[] are hereby incorporated herein as if they were specifically written herein.

Additionally, Paragraph 10 of the Subcontract required Amtech to defend and indemnify Uniwest:

> [Amtech] hereby assumes entire responsibility for any and all damage or injury of any kind or nature whatever, including death resulting therefrom, to all persons, whether employees of [Amtech], its subcontractors or agents.  If any claims for such damage or injury be made or asserted, whether or not such claim(s) are based upon the negligence of Uniwest or [Fountains], [Amtech] agrees to indemnify and save harmless Uniwest from any and all such claims, and further from any and all loss, costs, expense, liability, damage or injury, including legal fees and disbursements, that Uniwest may sustain, suffer or incur as a result thereof.

Further [Amtech] agrees to and does hereby assume the defense of any action at law or in equity which may be brought against Uniwest or [Fountains] arising by reason of such claims.

Finally, Exhibit B of the Subcontract required Amtech to "[f]urnish and install elevator work in accordance with 'Elevator Installation and Modernization Specifications for Logan Square East' as prepared by Zipf Associates, Inc." (the "Zipf Specifications").  The Zipf Specifications required Amtech to "name [Uniwest] as [an] Additional Insured" to its insurance policies or "submit a separate . . . Liability Insurance policy" for Uniwest.

## B.  THE INSURANCE POLICIES

Amtech had a commercial general liability insurance policy (the "CNA Policy") from Continental Casualty Company ("Continental") with a $1,000,000 coverage limit.[1]  The CNA Policy included an errors and omissions endorsement stating:

> In the event, you are required to add a person or organization as an additional insured on this policy under a written agreement or contract but you inadvertently fail to issue such endorsement, that person or organization is included as an insured.  Provided that, the additional insured is an insured only with respect to liability arising out of . . . your ongoing operations performed for that additional insured if the additional insured is an owner, lessee or contractor for whom you are performing

_____

[1] The first $500,000 of coverage was a self-insured retention managed by ABM Insurance Services, a division of Amtech's parent company, ABM Industries, Inc.  We refer to ABM Insurance Services and ABM Industries, Inc. as ABM.

4

work . . . .  Provided, further, that: [t]he
additional insured is an insured only to the
extent that it is required to be indemnified by
your written agreement or contract with the
additional insured; and [t]he insurance afforded
to the additional insured shall not exceed the
coverage and the limits of insurance required in
the written agreement or contract, or the
coverage and limits of insurance of this policy,
whichever is less.

Amtech also had a commercial umbrella insurance policy (the "AIU Policy") from AIU Insurance Company ("AIU") with a $25,000,000 coverage limit.  This policy insured any entities covered by the CNA Policy by including as an insured "[a]ny person . . . included as an additional insured in the policies listed in the Schedule of Underlying Insurance."[2]  The Schedule of Underlying Insurance included the CNA Policy.

The AIU Policy also included as an insured "[a]ny person . . . to whom you are obligated by a written Insured Contract to provide insurance such as is afforded by this policy but only with respect to . . . liability arising out of operations conducted by you or on your behalf . . . ."[3]  The AIU Policy defined "Insured Contract" to mean "any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party."

_____

[2] We refer to this provision of the AIU Policy as Subdivision E-4.
[3] We refer to this provision of the AIU Policy as Subdivision E-7.

Uniwest had a general liability insurance policy from Pennsylvania Manufacturers' Association Insurance Company ("PMA") with a $1,000,000 coverage limit. Uniwest also had a commercial umbrella insurance policy from United States Fire Insurance Company ("U.S. Fire") and a second tier excess policy from Federal Insurance Company ("Federal"), each with a $5,000,000 coverage limit.

### C. THE ACCIDENT AND RESULTING LAWSUIT

Thomas Stinson and Robert Bruce were employees of Amtech assigned to the elevator project. Stinson and Bruce were working on a scaffold in an elevator shaft on January 15, 2001, when the scaffold collapsed and they plummeted to the bottom of the shaft. Stinson died and Bruce sustained serious injury. Stinson's estate and Bruce sued Uniwest and others in Pennsylvania.[4]

PMA, Uniwest's principal insurer, notified Amtech that Uniwest and PMA expected it to defend and indemnify Uniwest against the Employees' lawsuit. ABM retained a Pennsylvania attorney, Richard Hohn, to determine whether the Subcontract required it to defend and indemnify Uniwest. Hohn determined that Paragraph 10 of the Subcontract was valid under Pennsylvania law but noted that the Subcontract was governed by

---

[4] We refer to Stinson's estate and Bruce collectively as the Employees.

6

Virginia law.  He opined that the provision was valid under Virginia law as well.

Based on Hohn's opinion that Amtech had a duty to defend and indemnify Uniwest, ABM directed him to negotiate the terms of Uniwest's defense with PMA.  PMA retained its own counsel, Joseph Gibley, for the negotiation.  Thereafter ABM agreed to defend and indemnify Uniwest "pursuant to the terms and conditions" of the Subcontract.  PMA accepted the offer and ABM retained James Lynn to be Uniwest's counsel with day-to-day control of Uniwest's defense.[5]

In July 2005, ABM notified Continental and AIU that Lynn and Hohn expected the Employees to demand damages exceeding $20,000,000.  AIU subsequently informed Lynn that it had not joined in ABM's agreement to defend and indemnify Uniwest.  ABM objected, contending that AIU had been informed of the accident as early as 2001 and was aware that ABM had agreed to defend and indemnify Uniwest for more than a year.

In November 2005, Continental informed AIU that litigation expenses already had exhausted Amtech's self-insured retention and were eroding coverage under the CNA Policy.  Continental determined that the AIU Policy umbrella coverage was exposed

---

[5] Gibley continued to represent Uniwest on claims by Fountains against it and Amtech incidental to the Employees' lawsuit.  Hohn continued to represent Amtech to preserve its defense that the Pennsylvania workers' compensation statute barred the Employees' further recovery from it.

7

and tendered the remaining coverage under the CNA Policy to AIU.  Soon thereafter, AIU notified ABM, Lynn, and Gibley that it considered Paragraph 10 of the Subcontract void under Virginia law and reserved its rights under the AIU Policy, asserting that there was no Insured Contract which required it to cover the defense and indemnification of Uniwest.[6] Nevertheless, AIU retained Robert Devine as counsel to participate in the defense of the Employees' lawsuit.  Although Devine undertook some defense responsibilities in preparation for trial, Lynn remained lead counsel for Uniwest.  Lynn also participated with Gibley in settlement conferences; Devine did not.

By February 2006, AIU had ignored repeated demands from ABM, Uniwest, and Uniwest's insurers to participate in settlement discussions and fulfill what they asserted to be its contractual obligation to defend and indemnify Uniwest.  At that time Uniwest and its insurers settled the Employees' claims against Uniwest for $9,500,000.

D.   THE LITIGATION PRECEDING THESE APPEALS

Uniwest and its insurers filed a complaint against Amtech and its insurers in the Circuit Court for Fairfax County in October 2006.  Uniwest and its insurers alleged, among other

---

[6] Uniwest promptly objected to AIU and Amtech and notified its own insurers, PMA, U.S. Fire, and Federal.

things, that Amtech breached its contractual duty to defend and indemnify Uniwest in the Employees' lawsuit. The circuit court determined that the defense and indemnification provision in Paragraph 10 of the Subcontract was void pursuant to Code § 11-4.1 because it indemnified Uniwest for its own negligence. Uniwest and its insurers then non-suited their action.

Thereafter, Amtech, ABM, and AIU filed a complaint in the circuit court in May 2008 seeking declaratory judgment that they were not liable to Uniwest or its insurers "in any amount or on any basis." Uniwest and its insurers responded by filing counterclaims in which they again alleged Amtech had a duty to defend and indemnify Uniwest under the Subcontract, under either Paragraph 10 or Paragraph 3.18.1 of the General Conditions incorporated through the Prime Contract. They further alleged that the negotiation between Hohn and Gibley formed an independent agreement to defend and indemnify. They also claimed AIU had a duty to defend and indemnify Uniwest under Subdivisions E-4 and E-7 of the AIU Policy, that AIU had acquiesced to defending and indemnifying Uniwest by not timely reserving its rights, and that AIU was estopped from denying its obligation to defend and indemnify because it retained Devine and he participated in the Employees' lawsuit. Uniwest and its insurers also filed third-party complaints bringing similar claims against Continental.

9

By agreement of all parties, the circuit court entered an order expressly incorporating its earlier ruling in the non-suited action that Paragraph 10 was void pursuant to Code § 11-4.1. The circuit court entered a separate order by agreement of the parties, expressly limited to Continental, finding that Uniwest was an additional insured under the CNA Policy.[7] It stated that "[f]or [the] purposes of all claims asserted in this action against [Continental] only, the [c]ourt finds that Continental has admitted that [Uniwest] is an additional insured under [the CNA Policy] . . . . This order is without prejudice to any claims or defenses of any other party to this action."

After a five-day bench trial, the circuit court determined that Amtech did not have a duty to defend and indemnify Uniwest based on Paragraph 3.18.1 of the General Conditions. To the extent the Subcontract incorporated Paragraph 3.18.1, it did so only to place Amtech in Uniwest's shoes with regard to Uniwest's duty to defend and indemnify Fountains. The court also determined that communications between Hohn and Gibley

---

[7] The agreed order found that the limits of the CNA Policy had been eroded by the defense of Amtech and Uniwest by Hohn and Lynn in the Employees' lawsuit and by the defense of Amtech and ABM in the litigation brought against them by Uniwest and its insurers. To the extent those expenses exhausted the coverage amount, Continental was discharged of further obligation. Any unexhausted balance would be contributed to satisfy the judgment against Amtech and ABM in this case.

negotiating the terms for Amtech's defense and indemnification of Uniwest did not create an independent agreement by Amtech to defend and indemnify Uniwest. Rather, those communications arose solely from Amtech's belief at the time that it owed such a duty based on Paragraph 10 of the Subcontract, although that provision was in fact void pursuant to Code § 11-4.1. Consequently, Amtech had no duty to defend or indemnify Uniwest.

The circuit court also determined that AIU had no duty to defend and indemnify Uniwest under either Subdivision E-4 or Subdivision E-7 of the AIU Policy. Because there was no valid provision requiring Amtech to defend and indemnify Uniwest, Uniwest was not an additional insured under the CNA Policy and Subdivision E-4 was not implicated. Likewise, in the absence of a valid defense and indemnification provision, there was no "Insured Contract" as defined by the AIU Policy to impose such a duty on AIU under Subdivision E-7.

The circuit court further determined that AIU had not acquiesced to or become estopped from denying a duty to defend and indemnify Uniwest. Although AIU retained Devine and he participated in the Employees' lawsuit, there was no acquiescence or estoppel because he merely supplemented and did not replace Lynn as lead counsel for Uniwest. Likewise the court held that AIU had not waived its ability to reserve its

rights.  Because Uniwest never demanded that AIU defend and indemnify it, the timing of AIU's reservation of rights did not constitute a waiver under California law, which governed the AIU Policy.

The circuit court then determined that Amtech had a duty to procure insurance for Uniwest because the Subcontract incorporated the insurance requirements of the Zipf Specifications.  Amtech breached this duty by failing to add Uniwest as an additional insured under the CNA and AIU Policies.  Accordingly, the court found Amtech liable to Uniwest and its insurers for the $9,500,000 settlement between Uniwest and the Employees.

The circuit court entered a final order awarding Uniwest and its insurers $9,500,000 in compensatory damages plus prejudgment interest.  Uniwest and its insurers filed petitions for appeal assigning error to the court's determinations that neither Amtech nor AIU had a duty to defend and indemnify Uniwest.  Amtech, ABM, and AIU filed a separate petition assigning error to the determination that Amtech had a duty to procure insurance for Uniwest and, if it did breach such a duty, to the amount of damages awarded.  We awarded these appeals.

## II. ANALYSIS

### A.  STANDARD OF REVIEW

12

We review the interpretation of a contract de novo. <u>PMA Capital Ins. Co. v. US Airways, Inc.</u>, 271 Va. 352, 357-58, 626 S.E.2d 369, 372 (2006). Thus, "we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself." <u>Eure v. Norfolk Shipbuilding & Drydock Corp.</u>, 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002). However, "[i]t is the function of the court to construe the contract made by the parties, not to make a contract for them." <u>Wilson v. Holyfield</u>, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). Accordingly,

> [t]he contract is construed as written, without adding terms that were not included by the parties. When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.

<u>PMA Capital Ins. Co.</u>, 271 Va. at 358, 626 S.E.2d at 372-73 (internal quotation marks and citations omitted). In addition, the contract is "construed as a whole. [Its] provisions are to be harmonized when possible, [and] effect is to be given to every stipulation when it can reasonably be done." <u>Virginian Ry. Co. v. Hood</u>, 152 Va. 254, 258, 146 S.E. 284, 285 (1929).

Nevertheless, a provision that violates public policy is void and has no legal effect. <u>Shuttleworth, Ruloff & Giordano,</u>

13

P.C. v. Nutter, 254 Va. 494, 497, 493 S.E.2d 364, 366 (1997). The public policy of the Commonwealth is determined by the General Assembly, for "it is the responsibility of the legislature, not the judiciary, . . . to strike the appropriate balance between competing interests . . . . Once the legislature has acted, the role of the judiciary is the narrow one of determining what [it] meant by the words it used in the statute." Dionne v. Southeast Foam Converting & Packaging, Inc., 240 Va. 297, 304, 397 S.E.2d 110, 114 (1990) (internal quotation marks and citations omitted).

B.   AMTECH'S DUTY TO DEFEND AND INDEMNIFY UNIWEST

Uniwest and its insurers assert that the circuit court erred when it ruled that the defense and indemnification requirement in Paragraph 10 of the Subcontract violated public policy pursuant to Code § 11-4.1.  We disagree.

The statute states, in relevant part, that:

> Any provision contained in any contract relating
> to the construction, alteration, repair or
> maintenance of a building, structure or
> appurtenance thereto, including moving,
> demolition and excavation connected therewith,
> or any provision contained in any contract
> relating to the construction of projects other
> than buildings by which the contractor
> performing such work purports to indemnify or
> hold harmless another party to the contract
> against liability for damage arising out of
> bodily injury to persons or damage to property
> suffered in the course of performance of the
> contract, caused by or resulting solely from the
> negligence of such other party or his agents or

14

employees, is against public policy and is void and unenforceable.

Code § 11-4.1.

Uniwest and its insurers argue that the statute is not implicated because the accident was not the result of Uniwest's sole negligence. Rather, they contend it resulted at least partly from Amtech's negligence because Amtech built the defective scaffolding and was responsible for the safety of its employees working on the elevator project. However, the unambiguous language of Code § 11-4.1 requires us to look to the contract containing the provision, not the circumstances from which the claim for indemnification arose, to determine whether an indemnification provision violates Code § 11-4.1.

The operative language of Paragraph 10 states "If any claims . . . be made or asserted, whether or not such claim(s) are based upon the negligence of Uniwest or [Fountains], [Amtech] agrees to indemnify and save harmless Uniwest from any and all such claims . . . ." (Emphasis added.) The plain meaning of this language clearly obligates Amtech to indemnify Uniwest whether or not the claim is based upon the negligence of Uniwest. These words irreconcilably conflict with the public policy expressed in Code § 11-4.1, which voids any contractual provision "which . . . purports to indemnify or hold harmless [Uniwest] against liability for damage . . .

15

caused by or resulting solely from the negligence of [Uniwest]."

Uniwest's argument that the statute does not apply because Paragraph 10 is written broadly enough to encompass claims arising from the negligence of Uniwest and other parties is unavailing. Because the phrases "caused by" and "resulting solely from" are disjunctive in the statute, it voids any indemnification provision that reaches damage caused by the negligence of the indemnitee, even if the damage does not result solely from the negligence of the indemnitee. Thus, the issue is not whether an indemnification provision is written so broadly that it encompasses the negligence of parties in addition to the indemnitee. Rather, the issue is whether the provision is so broad that it indemnifies the indemnitee from its own negligence.

Paragraph 10 clearly reaches beyond the negligence of other parties and indemnifies Uniwest. Therefore it violates Code § 11-4.1 and is void.[8]

---

[8] In its separate brief, Federal argues that Code § 11-4.1 does not apply because of its language stating that it "shall not affect the validity of any insurance contract, workers' compensation, or any agreement issued by an admitted insurer." That language is irrelevant here where the question is whether the indemnification provision of a construction subcontract is void pursuant to Code § 11-4.1. The Subcontract is not an insurance contract and neither Uniwest nor Amtech, the parties who executed it, are admitted insurers.

Uniwest and its insurers next assert that the circuit court erred when it found that Paragraph 3.18.1 of the General Conditions did not obligate Amtech to indemnify Uniwest.  We agree.

The circuit court determined that to the extent Paragraph 3.18.1 was incorporated into the Subcontract its effect merely was to require Amtech to step into the shoes of Uniwest and indemnify Fountains.[9]  The relevant language from Paragraph 3 of the Subcontract is that "[Amtech] agrees . . . to assume towards Uniwest all of the obligations and responsibilities that Uniwest has by the [Prime Contract] assumed toward [Fountains]."  (Emphasis added.)  The plain meaning of these words is that Uniwest's duty to defend and indemnify Fountains became a duty by Amtech to defend and indemnify Uniwest.

Two other courts have reached the same conclusion when considering similar subcontract language incorporating AIA indemnification provisions.  In Binswanger Glass Co. v. Beers Construction Co., 234 S.E.2d 363 (Ga. Ct. App. 1977), the subcontract required the subcontractor "to assume toward the Contractor all the obligations and responsibilities that the Contractor, by [the contract between the Contractor and the Owner], assumes toward the Owner."  Id. at 364.  Georgia's

_____

[9] There is no question that Paragraph 3.18.1 required Uniwest to indemnify Fountains.

Court of Appeals ruled that language sufficient to incorporate the indemnification provision in the AIA General Conditions against the subcontractor. Id. at 365. Similarly, in Whittle v. Pagani Bros. Construction Co., 422 N.E.2d 779 (Mass. 1981), the subcontract stated: "The Subcontractor agrees . . . to assume to the Contractor all the obligations and responsibilities that the Contractor by [its contract] assumes to" the town awarding the construction contract. Id. at 780. The highest court of Massachusetts held that language incorporated the AIA General Conditions' indemnification provision. Id. at 781. We find these decisions persuasive and agree with them.[10]

We therefore find that the Subcontract incorporated Paragraph 3.18.1 and hold that it imposed on Amtech a duty to defend and indemnify Uniwest.[11]

---

[10] While the provisions of the Prime Contract applied only "to the extent not otherwise excluded or modified by the terms of th[e] Subcontract," we have found that Paragraph 10 was void ab initio. Thus, it could not have excluded or modified Paragraph 3.18.1. Nevertheless, Amtech, ABM, and AIU now argue that Paragraph 3.18.1 should not apply because the existence of Paragraph 10 in the Subcontract led the parties to believe Paragraph 3.18.1 would not apply. Even if this argument had merit, it was not presented to the circuit court and we will not consider it for the first time on appeal. Rule 5:25; Hawthorne v. VanMarter, 279 Va. 566, 581, 692 S.E.2d 226, 235 (2010).

[11] In light of this holding, we do not reach the argument by Uniwest and its insurers that the negotiations between Hohn and Gibley created an independent agreement by Amtech to defend and indemnify Uniwest.

18

C.  AIU'S DUTY TO DEFEND AND INDEMNIFY UNIWEST

Uniwest and its insurers assert that the circuit court erred when it held that Subdivision E-4 and Subdivision E-7 did not create a duty by AIU to defend and indemnify Uniwest.  We agree.

Subdivision E-4 requires AIU to defend and indemnify any entity insured under the CNA Policy.[12]  Under the errors and omissions endorsement of the CNA Policy, Continental insured any entity Amtech was required by a written agreement to provide with insurance "to the extent that it is required to be indemnified by [the] written agreement."  Similarly, Subdivision E-7 requires AIU to defend and indemnify any entity "to whom [Amtech was] obligated by a written Insured Contract to provide insurance."  For this purpose, an "Insured Contract" is defined as "any oral or written contract or agreement . . . under which [Amtech] assume[d] the tort liability of another party."

The circuit court concluded that neither provision applied because the Subcontract did not impose on Amtech a duty to

---

[12] Uniwest and its insurers argue that the circuit court's finding that Uniwest was an additional insured under the CNA Policy compels a finding that it was an additional insured under Subdivision E-4.  We reject that argument.  The circuit court clearly limited that finding to claims "against [Continental] only" and expressly stated that the order was "without prejudice to any claims or defenses of any other party to this action."

defend and indemnify Uniwest. As we have determined, that conclusion was error because Paragraph 3.18.1 of the General Conditions was incorporated into the Subcontract and created such a duty.

Amtech, ABM, and AIU argue that Subdivision E-4 and Subdivision E-7 still do not apply because Amtech had no obligation to provide insurance to Uniwest. We disagree.

The Zipf Specifications require Amtech either to include Uniwest as an additional insured under its existing policies or to purchase separate insurance for Uniwest.[13] The clear language of the Subcontract contradicts the assertions by Amtech, ABM, and AIU that it did not incorporate the insurance requirement in the Zipf Specifications.

As we noted, we interpret the unambiguous terms of a contract according to their plain meaning. PMA Capital Ins. Co., 271 Va. at 358, 626 S.E.2d at 372-73; see also Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C., 269 Va. 315, 329, 609 S.E.2d 49, 56 (2005); American Spirit Ins. Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001). In addition, we read the contract as a whole and give effect to every provision

_____

[13] The actual term used in the Zipf Specifications is "Construction Manager." Although the Zipf Specifications do not define that term, the circuit court interpreted it to refer to Uniwest. In addition, Uniwest and Federal reiterate that interpretation in their briefs in Record No. 091496. Amtech, ABM, and AIU have never disputed that Uniwest is the Construction Manager.

when possible.  Hood, 152 Va. at 258, 146 S.E. at 285; see also Dowling v. Rowan, 270 Va. 510, 518, 621 S.E.2d 397, 400 (2005); American Spirit Ins. Co., 261 Va. at 275, 541 S.E.2d at 555.

Amtech, ABM, and AIU rely on our decision in VNB Mortgage Corp. v. Lone Star Industries, Inc., 215 Va. 366, 209 S.E.2d 909 (1974), and argue that the Zipf Specifications were incorporated only for a limited purpose.  In that case we determined that in agreeing to provide materials and perform work in accordance with specifications incorporated in a contract between an owner and a general contractor, a subcontractor was bound to those specifications only for the purpose of providing the materials and performing the work. Id. at 369-70, 209 S.E.2d at 912-13.

While a similar provision appears in the Subcontract in this case, it is distinguishable on two grounds.  First, the Zipf Specifications are incorporated into the Subcontract not only by that provision's reference to the Prime Contract but by reference in Exhibit B as well.  Moreover that provision of the Subcontract, unlike the one in VNB Mortgage, states that the specifications are "incorporated herein and made a part of this Subcontract for all intents and purposes."

Second, the Subcontract also states "[t]he attached exhibits shall form the contract" and explicitly lists Exhibit B.  Exhibit B required Amtech to "furnish and install" its work

21

"in accordance with" the Zipf Specifications. Nothing in the plain meaning of these words limits the incorporation of the Zipf Specifications to the technical requirements for the elevators to the exclusion of other requirements, including the insurance provision.

Therefore we find that both predicates of the CNA Policy and Subdivision E-7 are met: the Subcontract required Amtech to defend and indemnify Uniwest and to provide insurance to Uniwest. Consequently, Uniwest was an insured under the CNA and AIU policies. Therefore, we hold that AIU had a duty to defend and indemnify Uniwest under both Subdivision E-4 and Subdivision E-7.[14]

### D. DAMAGES

Amtech, ABM, and AIU argue that our conclusions necessarily require that we remand for further proceedings to determine the extent to which the accident giving rise to the Employees' lawsuit was caused by Uniwest's negligence. We agree.

As we have determined, the Subcontract does not require Amtech to indemnify Uniwest for its own negligence. Amtech is

---

[14] In light of this holding, we do not reach the arguments by Uniwest and its insurers that AIU acquiesced in or is estopped from denying a duty to defend and indemnify or waived its ability to reserve its rights. Finally, because we find that Uniwest is an additional insured under the AIU Policy, the remaining arguments by Amtech, ABM, and AIU are moot.

not liable to contribute to Uniwest's settlement with the Employees to the extent, if any, the accident was caused by Uniwest's own negligence.

Accordingly, we will remand for trial to determine the issue of relative liability for the accident and for entry of judgment against Amtech and AIU for compensatory damages based upon Amtech's relative liability. Damages shall further include the costs of Uniwest's defense in the Employees' lawsuit for which Amtech and AIU are liable based on their duty to defend it in that litigation, to the extent such costs have not yet been paid by Amtech and its insurers.

### III. CONCLUSION

We affirm the circuit court's holding that Paragraph 10 of the Subcontract is void against the public policy expressed in Code § 11-4.1. However, because we hold that Paragraph 3.18.1 of the Prime Contract imposed a duty on Amtech to defend and indemnify Uniwest and we find that Uniwest was insured under Subdivision E-4 and Subdivision E-7 of the AIU Policy, we will reverse the contrary rulings of the circuit court and remand for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.