PRESENT:  All the Justices

JANET M. OTT

OPINION BY
v.   Record No. 101278         JUSTICE WILLIAM C. MIMS
                               November 4, 2011

LOU ANN MONROE, ET AL.

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
John R. Alderman, Judge Designate

In this appeal, we consider whether membership in a Virginia limited liability company may be transferred by will.

I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Admiral Dewey Monroe, Jr. ("Dewey") and his wife Lou Ann Monroe ("Lou Ann") formed a Virginia limited liability company, L&J Holdings, LLC ("the Company"), which was governed by an operating agreement they executed in April 2003 ("the Agreement").  The Agreement provided that Dewey and Lou Ann were the sole members and that they held an 80% membership interest and a 20% membership interest, respectively.  It also provided that Lou Ann would be the managing member and Joseph G. Monroe ("Joseph") would serve as the successor managing member in the event of her death, disability, removal, or resignation.

Paragraph 2 of the Agreement provided that "[e]xcept as provided herein, no Member shall transfer his membership or ownership, or any portion or interest thereof, to any non-Member person, without the written consent of all other Members, except by death, intestacy, devise, or otherwise by operation of law."

Paragraph 10(B) provided in relevant part that "[n]o Member shall, directly or indirectly, transfer, sell, give, encumber, assign, pledge, or otherwise deal with or dispose of all or any part of his Membership Interest now owned or subsequently acquired by him, other than as provided for in this Agreement." Paragraph 10(C) provided in relevant part that, Paragraph 10(B) notwithstanding, "any Member . . . may transfer all or any portion of the Member's Interest at any time to . . . [o]ther Members [or] [t]he spouse, children or other descendants of any Member."

Dewey died in 2004. Through a will executed prior to the formation of the Company, he bequeathed his entire estate to his daughter, Janet. After the will was admitted to probate, Janet asserted that Dewey's bequest transferred his membership in the Company to her. She called a meeting of the Company, sending notice to Lou Ann, with the intent to remove Lou Ann and Joseph from their positions as managing member and successor managing member, respectively. Lou Ann responded that Janet had inherited only Dewey's right to share in profits and losses of the Company and to receive distributions to which he would be entitled.

Janet proceeded with the meeting and putatively removed Lou Ann and Joseph, electing herself as the Company's new managing member and electing Susan Shackelford as successor managing

member in the event of her death, disability, removal, or resignation. Thereafter, Janet filed a complaint in the circuit court seeking declaratory judgment that she had inherited her father's full membership in the Company and Lou Ann and Joseph had been validly removed from their positions. Lou Ann and Joseph filed a demurrer, again asserting that Janet had inherited only Dewey's right to share in profits and losses and to receive distributions.

The court denied the demurrer and the case proceeded to a bench trial. At its conclusion, the court held that Dewey was dissociated from the Company upon his death by operation of Code § 13.1-1040.1(7)(a). Consequently, the court concluded that all his rights as a member to participate in the control of the Company's affairs terminated and only the right to share profits and losses and to receive distributions survived to be inherited by Janet through his will. Accordingly, the court ruled that Janet was not a member of the Company and thus lacked the authority to remove Lou Ann and Joseph from their positions. We awarded Janet this appeal.

## II. ANALYSIS

This appeal assigns error to the circuit court's interpretation of the Agreement and the relevant statutes. Accordingly, we review the judgment de novo. Uniwest Constr.,

<u>Inc. v. Amtech Elevator Servs.</u>, 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010).

When interpreting a contract, we construe it as a whole. When its terms are clear and unambiguous, we give them their plain meaning.  We harmonize its provisions and give effect to each of them when it reasonably can be done.  <u>Id.</u>  Similarly, we construe statutes as a consistent and harmonious whole to give effect to the overall statutory scheme.  <u>Virginia Electric & Power Co. v. Board of County Supervisors</u>, 226 Va. 382, 388, 309 S.E.2d 308, 311 (1983).  We apply the plain meaning of a statute unless its terms are ambiguous or doing so would lead to an absurd result.  <u>Covel v. Town of Vienna</u>, 280 Va. 151, 158, 694 S.E.2d 609, 614 (2010).

Janet argues that the circuit court erred in ruling that Dewey was dissociated upon his death by operation of Code § 13.1-1040.1(7)(a) because that provision is preceded by the proviso, "[e]xcept as otherwise provided in the articles of organization or an operating agreement."  She asserts that Paragraph 2 of the Agreement constitutes such an exception and supersedes dissociation under the statute.[1]  We disagree.

---

[1] Janet also asserts that statutory dissociation is preempted by Paragraph 10(A), which states that "no Member shall have any right to voluntarily resign or otherwise withdraw from the Company . . . without the prior written consent of all remaining Members of the Company.  Any attempted resignation or withdrawal without the requisite consent shall be null and void

4

## A.   THE VIRGINIA LIMITED LIABILITY COMPANY ACT

We begin our analysis by examining the statutory framework governing Virginia limited liability companies, the Virginia Limited Liability Company Act, Code § 13.1-1000 et seq. ("the Act").  "The [limited liability company] is a hybrid entity, borrowing from both the corporate and partnership models" to combine a corporation's limited liability for its owners with a partnership's pass-through treatment for income tax purposes. S. Brian Farmer & Louis A. Mezzullo, The Virginia Limited Liability Company Act, 25 U. Rich. L. Rev. 789, 790 (1991). When the Act was enacted in 1991, federal tax regulations denied the pass-through treatment afforded partnerships if a business entity possessed three of the four principal characteristics of corporations:  (1) perpetual existence, (2) central management, (3) limited liability of owners, and (4) free transferability of ownership interests.  Id. at 813-15.  Because limited liability was an indispensible characteristic of limited liability companies, the provisions of the Act were drafted to avoid the three remaining corporate characteristics.  Id. at 815-21. Thus, the transferability of a member's interest in a limited

---

and have no legal effect."  Nothing in the record of this case establishes that Dewey's death was a voluntary attempt to resign or otherwise withdraw from the Company.  Paragraph 10(A) therefore is not implicated.

liability company is analogous to the transferability of a partner's interest in a partnership.

When the Act was enacted in 1991, the Uniform Partnership Act expressly provided that

> [a] conveyance by a partner of his interest in the partnership does not . . . entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.

Former Code § 50-27(1) (Repl. Vol. 1989).[2]

Implicit within this language was the recognition that a partner's interest in a partnership comprises two distinct and divisible components. The first component, the control interest, encompasses the partner's entitlement to participate with the other partners in the administration of the partnership's affairs. The second component, the financial interest, encompasses only the sharing of profits and losses of the partnership and receipt of distributions from its accumulated income and assets. Under the statute, only the financial interest is alienable. Thus, the control interest in

---

[2] This limitation was preserved in Code § 50-73.106 when Chapter 1 of Title 50 was repealed and replaced upon the enactment of the Virginia Uniform Partnership Act in 1996. 1996 Acts ch. 292.

a partnership is personal to the partner and cannot be bestowed on another by the unilateral act of a partner even if the words of his conveyance do not expressly limit its scope.

The division of a partner's interest into a control interest, which may not be transferred unilaterally, and a financial interest is mirrored in the Act.  Both when the Company was formed and when Janet inherited through Dewey's will, Code § 13.1-1039 provided that

> [u]nless otherwise provided in the articles of organization or an operating agreement, a membership interest in a limited liability company is assignable in whole or in part. . . . An assignment does not entitle the assignee to participate in the management and affairs of the limited liability company or to become or to exercise any rights of a member.  Such an assignment entitles the assignee to receive, to the extent assigned, only any share of profits and losses and distributions to which the assignor would be entitled.[3]

Thus, an assignee of a financial interest has no control interest in a limited liability company without becoming a member.  Code § 13.1-1040(A) provides the means by which the assignee of a financial interest may become a member:  "Except as otherwise provided in writing in the articles of organization or an operating agreement, an assignee of an interest in a limited liability company may become a member only by the

---

[3] Code § 13.1-1039 was subsequently amended and reenacted to add a new subdivision not relevant to this appeal.  2006 Acts ch. 912.

consent of" a majority of those members exercising the direct management of the company.

In light of this statutory background, we turn to Janet's argument.

### B.  DIRECT INHERITANCE OF MEMBERSHIP IN A LIMITED LIABILITY COMPANY BY DESCENT OR DEVISE

Janet argues that she inherited Dewey's membership directly by operation of his will.  She asserts the Agreement permitted her to inherit directly because Paragraph 2 superseded Code § 13.1-1040.1(7)(a).  However, Paragraph 2 merely prohibits any member from transferring any part of his membership except (a) where specifically allowed under the terms of the Agreement, (b) with the consent of all the other members, or (c) upon death, intestacy, devise, or otherwise by operation of law.  It does not address statutory dissociation and does not state an intent to supersede Code § 13.1-1040.1(7)(a).  Consequently, it lacks specific language that would constitute an exception to the rule of dissociation set forth in Code § 13.1-1040.1.  Dewey thus was dissociated from the Company upon his death and Janet became a mere assignee by operation of Code § 13.1-1040.2, entitled under Code § 13.1-1039 only to his financial interest.

Even if Paragraph 2 had superseded dissociation under Code § 13.1-1040.1, it is not possible for a member unilaterally to alienate his personal control interest in a limited liability

8

company.  Code § 13.1-1039(A).  The words "[u]nless otherwise provided in the articles of organization or an operating agreement" in Code § 13.1-1039 make it possible for a limited liability company to restrict the assignment of members' financial interests because they modify the remainder of the sentence, which continues "a membership in a limited liability company is assignable in whole or in part."  The words "[u]nless otherwise provided in the articles of organization or an operating agreement" do not make it possible for a limited liability company to allow a member to assign his control interest because they do not modify the separate sentence, which states that "[a]n assignment does not entitle the assignee to participate in the management and affairs of the limited liability company or to become or to exercise any rights of a member."  Additionally, Code § 13.1-1023(A) provides that an operating agreement may not contain provisions inconsistent with the laws of the Commonwealth.  Thus it was not within Dewey's power under the Agreement unilaterally to convey to Janet his control interest and make her a member of the Company upon his death because the Agreement could not confer that power on him.

### III.  CONCLUSION

For the foregoing reasons, the circuit court did not err in holding that Janet inherited only Dewey's financial interest in the Company – the right to share in profits and losses and to

receive distributions.  Because she was not a member, the circuit court did not err in holding that she lacked authority to remove its managing member and successor managing member. Accordingly, we will affirm the judgment of the circuit court.

Affirmed.
